# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-04-00174-CR

---

**Jose Ybarra, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. 3021536, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Jose Ybarra appeals from his conviction for indecency with a child by contact and aggravated sexual assault of a child. *See* Tex. Pen. Code Ann. §§ 21.11(a)(1) (West 2003), 22.021 (West Supp. 2005). Appellant waived a jury trial. The court found him guilty and sentenced him to forty years' imprisonment in the Texas Department of Criminal Justice-Correctional Institutions Division[1] for the aggravated sexual assault count and twenty years' imprisonment for the indecency with a child by contact count. We affirm the trial court's judgment.

### Background

M.Y., the complainant, was sixteen at the time of trial. She testified that when she was four years old, she lived in an apartment in Austin with appellant (her father), her mother, two

---

[1] This division was formerly known as the Institutional Division.

brothers, and a younger sister. She testified about an incident in which appellant took her into his bedroom and touched her vagina with his finger while she was lying on the bed. She said that his finger penetrated her vagina. She said that appellant told her he would beat up her brothers if she told anyone about what happened. M.Y. also testified that appellant touched her vagina when she was in her bedroom at night. These instances of abuse occurred once or twice a week until she was nine. Finally, she described an incident when appellant touched her "in the behind" with his penis while she was in the shower. She testified that his penis did not penetrate her vagina, but touched it. Appellant promised to buy her a Barbie doll and Barbie house if she did not tell anyone.

At some point during this time from ages four to nine, M.Y. and her mother and siblings moved to a shelter. Appellant was prohibited from having contact with M.Y., but one day when she was nine years old he picked her up at school, took her to the apartment where they had previously lived, and raped her. She testified that the assault was painful, and that she screamed and cried but appellant would not stop. He raped her a second time and she continued to scream and cry until he was through. She testified that she felt him ejaculate. Appellant then made her shower and threatened to kill her or hurt her mother if M.Y. ever told anyone about the incident.

When M.Y. was about fourteen years old, she was living at the Austin Children's Shelter after having been removed from her mother's care by Child Protective Services (CPS). M.Y. did not tell the CPS workers about the sexual abuse. Eventually, however, she "became comfortable" with a staff member at the shelter, Anthony Jimenez, and told him about the abuse. M.Y. told Anthony not to tell the police because of appellant's threats, but Jimenez told her that he had to report the crime.

2

On cross-examination, M.Y. testified that she had been raped by someone else when she was fourteen and that perpetrator was in jail. She had accused three other people of sexual abuse. She was taking multiple medications such as Effexor and Depakote. By agreement, a report from Dr. Beth Nauert was admitted in which M.Y. discussed having recent [at the time of trial] intercourse with a boyfriend and other voluntary sexual activity with peers.

Jimenez testified that he was the director of staff on May 12, 2002, the date when M.Y. made her outcry. He testified that he spoke with her in the dining room before bedtime, and she told him she wanted to talk about something serious. M.Y. then told him about the sexual abuse. Jimenez testified that she was clenching her fists in anger at times, and in tears at other times. He testified about the fear of retaliation she expressed when he told her he was obligated to report the abuse to the police.

M.Y.'s older brother, J.Y., testified that he remembered an incident in the apartment that occurred during this time. He went to appellant's bedroom and saw M.Y. lying on her back without underwear on. He said that appellant's head was touching her "private property," which he clarified as meaning her sexual organ. When appellant saw J.Y. watching, appellant grabbed J.Y. by the throat and threatened to kill him if he told anyone what happened.

Austin Police Department Detective Trent Watts investigated the sexual abuse claim. He received a CPS referral concerning the abuse, but when he first spoke to M.Y. she denied the abuse. A few days later, he again interviewed M.Y. and other family members, as well as Jimenez. He traveled to Karnes City to interview appellant, who was in prison there. Appellant first denied

3

having any sexual contact with M.Y. Later, he admitted that he picked her up from school on the day of the alleged rape.

Accompanied by a polygraph examiner, Watts returned for a second interview. After informing appellant that some of the results from the polygraph indicated deception, appellant said that "this has been eating me up inside." Appellant then admitted that he touched M.Y.'s vagina when she was four and touched and rubbed his hand against her vagina twice on the day when he picked up M.Y. from school.

Appellant testified that he was incarcerated for abusing his youngest son.[2] He also testified that he assaulted his wife in 1997 and was placed on probation, which was revoked in 1998. At trial, appellant denied all of M.Y.'s allegations. He testified that he first thought that M.Y. was accusing her older brother J.Y. of the abuse. He decided to confess to the crime for his son's sake to show the children that he still loved them even though he could not provide financial assistance to his family while in jail. Appellant admitted that he first denied M.Y.'s allegations, then confessed, but claimed that his confession occurred before the revelation of the polygraph results, not after.

Appellant brings four issues on appeal, contending that the evidence was legally and factually insufficient to support the convictions for aggravated sexual assault and for indecency with a child by contact.

---

[2] This son is M.Y.'s younger brother, whose initials are the same as the older brother's, J.Y.

## Discussion

### *Legal and Factual Sufficiency Standard of Review*

When reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The trier of fact is entitled to resolve any conflicts in the evidence, to evaluate the credibility of the witnesses, and to determine the weight to be given any particular evidence. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

In a factual sufficiency review, the reviewing court "views all the evidence without the prism of 'in the light most favorable to the prosecution,'" and sets aside the verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Johnson v. State*, 23 S.W.3d at 7; *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In such a review, the court asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is too weak or that the contrary evidence is too strong to rationally support a finding of guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). Although an appellate court is authorized to disagree with the fact-finder's determination, the review must employ appropriate deference to prevent the appellate court from substituting its judgment for that of the fact-finder. *Johnson*, 23 S.W.3d at 11; *Jones*, 944 S.W.2d at 648. Disagreeing with the fact-finder's evaluation is appropriate only when such a step is necessary in order to prevent a "manifest injustice." *Johnson*, 23 S.W.3d at 9.

*Analysis of the Evidence*

In issues one and three, appellant contends that the evidence is legally and factually insufficient to support his conviction for aggravated sexual assault. *See* Tex. Pen. Code § 22.021. In short, the victim's account of the assault on the day appellant picked her up from school fulfilled the elements of the offense. The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (West 2005); *Perez v. State*, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd).

Appellant contends that the lapse of time between the events and the outcry, M.Y.'s use of multiple medications, emotional problems, admission of sexual activities with peers, and discrepancies between her and her brother's testimony, completely impaired her credibility. The fact-finder is permitted to believe or disbelieve any part of the testimony of any witness. *Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998); *Perez*, 113 S.W.3d at 838. Reconciliation of evidentiary conflicts is solely a function of the trier of fact. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Although appellant confessed only to rubbing M.Y.'s vagina, not penetration, his account of the other circumstances on the day of the rape corroborated hers. He also admitted to performing other sexual acts on M.Y. The fact-finder, as the sole judge of credibility, did not have to accept appellant's story that his confession was an attempt to deflect blame from his oldest son. *See Losada*, 721 S.W.2d at 309. Jimenez testified about M.Y.'s fear and request not to report the abuse, which tended to corroborate her account of appellant's threats. The discrepancy between her and her brother's testimony about the one incident in which J.Y. appeared to describe

6

appellant performing oral sex on M.Y. and M.Y. only talked about digital penetration was not whether a sexual act happened, but the exact nature of that act. Based on the amount of information corroborated and appellant's confession, the fact-finder could have determined that M.Y. was a credible witness in spite of some problems.

In reviewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Johnson*, 23 S.W.3d at 7. Further, a neutral review of the evidence, employing appropriate deference to the fact-finder's judgment, does not lead us to conclude that the proof of guilt is so weak or the contrary evidence so strong as to preclude a rational fact-finder from finding guilt beyond a reasonable doubt. *See Zuniga*, 144 S.W.3d at 484. Accordingly, the evidence is factually sufficient. We overrule issues one and three.

In issues two and four, appellant contends that the evidence was legally and factually insufficient to support appellant's conviction for indecency with a child by contact. *See* Tex. Pen. Code § 21.11(A)(1). Appellant argues all of his issues together, and so makes the same argument centering on credibility. The victim's account of the events that happened when she was four would support a rational finder of fact finding that all the elements had been established. Further, her account was also substantially corroborated by J.Y.'s testimony even though there were some discrepancies between their testimony. For the reasons discussed in the analysis of issues one and three, we hold the evidence legally and factually sufficient to support the conviction for indecency with a child by contact and overrule issues two and four.

## Conclusion

We have overruled appellant's four issues.  Accordingly, we affirm the trial court's judgment.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   December 15, 2005

Do Not Publish