**Robert William TEAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–01–00166–CR.

Court of Appeals of Texas, Dallas.

April 24, 2002.

Mary Jo Earle, Law Offices of Mary Jo Earle, Dallas, for Appellant.

William T. (Bill) Hill, Jr., Dallas, for State.

Before Justices KINKEADE, MORRIS, and BRIDGES.

## OPINION

Opinion By Justice KINKEADE.

Robert William Tear appeals his convictions for aggravated sexual assault of a child under fourteen years of age. A jury found Tear guilty on two counts and assessed his punishments at ten years' imprisonment in the state penitentiary, probated for ten years, and fifteen years' imprisonment in the state penitentiary. In eight issues on appeal, Tear complains (1) the two offenses were improperly joined, (2–5) the evidence is legally and factually insufficient on both counts, (6) hearsay testimony was improperly admitted, (7) the jury charge on guilt/innocence misapplied the law to the facts, and (8) the jury charge on punishment improperly allowed consideration of his guilt on the first count when assessing his punishment on the second count. Because the offenses were properly joined, the evidence is legally and factually sufficient on both counts, the testimony was properly admitted under the outcry exception to the hearsay rule, there was no error in the guilt/innocence charge, and there was no harm from the error in the punishment charge, we affirm.

### Factual Background

W.T., the four-year-old victim and Tear's son, was living with foster parents after being removed from his home by Child Protective Services ("CPS") on unrelated incidents. After complaining his bottom hurt, W.T. told Kathleen Hoffman, his foster mother, that Tear would put KY Jelly on his fingers and put them into W.T.'s bottom. Hoffman notified CPS, which began an investigation, and W.T. was referred to Susanne Faulkner, a clinical

therapist with the Denton County Children's Advocacy Center. W.T. told Faulkner that Tear put W.T.'s penis in his mouth. Tear was charged in a single indictment with two counts of aggravated sexual assault of a child by (1) digitally penetrating W.T.'s anus and (2) putting W.T.'s penis in Tear's mouth.

## Joinder of Offenses

■ In his first issue on appeal, Tear argues the two offenses were improperly joined. Tear contends that the offenses did not arise out of the same transaction, nor were they part of a common scheme or plan.

Article 1.14(b) of the Texas Code of Criminal Procedure provides that a defendant waives any error on appeal when he fails to object to a defect, error, or irregularity of form or substance in the indictment before trial begins. TEX.CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon Supp.2002); see Studer v. State, 799 S.W.2d 263, 273 (Tex.Crim.App.1990). In this case, there is no evidence in the record indicating Tear objected to the joinder before his trial began. Consequently, Tear has forfeited his right to complain of the joinder on appeal. See Studer, 799 S.W.2d at 273; Thacker v. State, 999 S.W.2d 56, 63 (Tex. App.-Houston [14th Dist.] 1999, pet. ref'd) (appellant waived misjoinder claim on appeal because she failed to object before trial).

■ However, even if he had objected, the joinder of the two offenses was proper. Article 21.24(a) of the code of criminal procedure provides that multiple offenses may be joined in a single indictment with each offense submitted in a separate count, if those offenses come out of the same criminal episode, as defined in chapter 3 of the penal code. TEX.CODE CRIM. PROC. ANN. art. 21.24(a) (Vernon 1989). Section 3.01 of the penal code defines "criminal epi-

sode" as two or more offenses that are committed (1) pursuant to the same transaction(s) that are linked to a common scheme or plan, or (2) "the offenses are the repeated commission of the same or similar offenses." TEX. PEN.CODE ANN. § 3.01 (Vernon 1994). Tear was charged with two separate counts of sexually assaulting W.T. Because both offenses are the "repeated commission of the same or similar offenses," the State properly joined the two offenses in the same indictment. See O'Hara v. State, 837 S.W.2d 139, 142 (Tex. App.-Austin 1992, pet. ref'd) (State properly joined three separate counts of sexual assault of same child victim by appellant because they were "repeated commission of the same or similar offenses"). We overrule Tear's first issue.

## Outcry Witness

Tear argues in his sixth issue that Susanne Faulkner's testimony was inadmissible hearsay. Tear contends that because Faulkner was not the first adult to whom W.T. made his outcry statement, her uncorroborated testimony of his statements to her was inadmissible.

### 1. Standard of Review

■ We review the trial court's ruling regarding the admission or exclusion of evidence under an abuse of discretion standard. See Weatherred v. State, 15 S.W.3d 540, 542 (Tex.Crim.App.2000); Sims v. State, 12 S.W.3d 499, 500 (Tex.App.-Dallas 1999, pet. ref'd) (trial court has broad discretion in deciding proper outcry witness). We will not disturb the ruling on appeal if it is within the zone of reasonable disagreement. See Weatherred, 15 S.W.3d at 542.

### 2. Applicable Law

■ The outcry testimony of a child victim is hearsay when it is offered for the

truth of the matter asserted. *Dorado v. State*, 843 S.W.2d 37, 38 (Tex.Crim.App. 1992). However, it is admissible if it falls within an exception to the hearsay rule. *Id.* In child abuse cases, article 38.072, sections 2(a)(1) and (2) of the code of criminal procedure provide for the admission of hearsay statements describing the offense that are made by the child victim, who is twelve years or younger, to the first person eighteen years or older. TEX.CODE CRIM. PROC. ANN. art. 38.072, § 2(a) (Vernon Supp.2002). To qualify as a proper outcry statement, the child must have described the alleged offense in some discernible way and must have more than generally insinuated that sexual abuse occurred. *See Sims*, 12 S.W.3d at 500.

■ Multiple outcry witnesses can testify about different instances of abuse committed by the defendant against the victim. *Hernandez v. State*, 973 S.W.2d 787, 789 (Tex.App.-Austin 1998, pet. ref'd). If the child victim first described one type of abuse to one outcry witness, and first described a different type of abuse to a second outcry witness, the second witness could testify about the different instance of abuse. *Turner v. State*, 924 S.W.2d 180, 183 (Tex.App.-Eastland 1996, pet. ref'd) (police officer could testify about victim's outcry about penile penetration because victim's previous outcry to counselor was about digital penetration); *see Hernandez*, 973 S.W.2d at 789 (CPS worker could testify about victim's outcry of sexual assault at one location because victim's previous outcry to his mother was about another sexual assault at different location).

3. Application of the Law to the Facts

■ In this case, there were two outcry witnesses: Hoffman and Faulkner. Hoffman, W.T.'s foster mother, testified that W.T. told her Tear used KY Jelly when he put his fingers in W.T.'s bottom. Faulk-

ner, W.T.'s therapist, testified that W.T. told her four months later that Tear put W.T.'s penis in his mouth; this was the first time W.T. made a statement about Tear putting W.T.'s penis in his mouth. We conclude these two witnesses were both proper outcry witnesses. *See Hernandez*, 973 S.W.2d at 789; *Turner*, 924 S.W.2d at 183. Each witness testified to a different type and instance of abuse committed by Tear against W.T. *See Turner*, 924 S.W.2d at 183. Consequently, we overrule Tear's sixth issue.

### Sufficiency of the Evidence

In his second through fifth issues, Tear complains the evidence is legally and factually insufficient on both counts. Regarding the first count of digital penetration, Tear argues the evidence is insufficient because there was evidence explaining the medical necessity for his actions. Regarding the second count of mouth-to-penis contact, Tear argues that the only evidence the State offered to prove that offense was the inadmissible hearsay testimony of Faulkner.

### 1. Standards of Review

■ When reviewing legal sufficiency of the evidence, this Court looks to whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution. *See Young v. State*, 14 S.W.3d 748, 753 (Tex.Crim.App. 2000). We look to all the evidence in the record, including admissible and inadmissible evidence, and direct and circumstantial evidence. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony.

*Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984). The jury is free to accept or reject all or any part of a witness's testimony. *Id.; Dumas v. State*, 812 S.W.2d 611, 615 (Tex.App.-Dallas 1991, pet. ref'd). This Court is to ensure only that the jury reached a rational conclusion, not to re-evaluate the weight and credibility of the evidence. *See Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App.1993).

 The "complete and correct" factual sufficiency review requires examining all the evidence, both for and against the finding, in a neutral light, and determining whether the proof of guilt is "so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). This Court must defer to the jury's findings and may not substantially intrude upon the jury's role as the sole judge of the weight and credibility of the witnesses. *See Cain v. State*, 958 S.W.2d 404, 408 (Tex.Crim.App.1997); *Lee v. State*, 29 S.W.3d 570, 574 (Tex.App.-Dallas 2000, no pet.).

#### 2. Applicable Law

 The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault. TEX.CODE CRIM. PROC. ANN. art. 38.07(a) (Vernon Supp.2002); *Empty v. State*, 972 S.W.2d 194, 196 (Tex.App.-Dallas 1998, pet. ref'd); *Karnes v. State*, 873 S.W.2d 92, 96 (Tex.App.-Dallas 1994, no pet.). Furthermore, a child victim's outcry statement alone can be sufficient to support a conviction for aggravated sexual assault. *Kimberlin v. State*, 877 S.W.2d 828, 831 (Tex.App.-Fort Worth 1994, pet. ref'd) (citing *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex.Crim.App. 1991)).

#### 3. Application of the Law to the Facts

 W.T. testified at trial that Tear would put KY Jelly on his fingers and put them into W.T.'s "bow-bow," his bottom. W.T. refused to testify about any other incidents. Hoffman, the foster mother, testified that after giving W.T. a bath, he told her that Tear used "KY Jelly in [W.T.'s] butt when [Tear] puts his fingers there." W.T. did not tell her at that time that Tear was putting medicine in his bottom. She notified CPS the next morning. In an affidavit she later gave to CPS, Hoffman testified that W.T. told her it hurt when Tear put his fingers in W.T.'s bottom, Tear did it to play, and it happened in a "garage house." At trial, she testified that W.T. would give himself an erection in the bathtub, and he once stood up in the tub and said, "My daddy likes my penis hard and strong." On cross-examination, defense counsel showed Hoffman a diary entry she had made the day after W.T.'s outcry statement. Afterward, Hoffman acknowledged her diary entry for that day stated that she asked W.T. why Tear used the KY Jelly, and he said Tear used it for medicine and used Q Tips to stop the bleeding. Ms. Hoffman testified she did not remember W.T. making the statement about the medicine.

Faulkner, the clinical therapist, testified W.T. told her about Tear using KY Jelly when he put his fingers in W.T.'s bottom. He also made an outcry statement to her, telling her that Tear put his mouth on W.T.'s penis. Faulkner denied that any of W.T.'s descriptions of the abuse indicated Tear was administering medical care.

Dr. Jeffrey Berkowitz, a pediatrician, testified that he examined W.T. while W.T. was living with his foster parents. Berkowitz noted that W.T.'s rectal area appeared normal. Dr. Patricia Wheelahan testified she was W.T.'s pediatrician for his first four years. She testified that W.T.

suffered from a yeast infection on his bottom. She prescribed a topical cream to be applied externally to the rectal area. She denied prescribing suppositories and could not find in W.T.'s medical chart any notation indicating she recommended over-the-counter suppositories for fever. She testified she never would have told someone to stick his finger inside a child's anus to apply a lubricant or the topical cream she had prescribed.

This evidence is legally sufficient to support Tear's guilt on both counts. Based on W.T.'s testimony alone, there was sufficient evidence to support the jury's finding of guilt on count one of digital penetration. *See Empty,* 972 S.W.2d at 196. In addition, there was outcry testimony from Hoffman and testimony from Faulkner that corroborated W.T.'s testimony. Tear, nevertheless, argues there is evidence to support his defensive theory that he was administering medicine to W.T. when he used the KY Jelly. However, W.T.'s pediatrician denied prescribing any medication that had to be inserted into W.T.'s rectum. The jury was the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony, and was free to accept or reject all or any part of their testimony. *See Bonham,* 680 S.W.2d at 819.

Tear argues the evidence is legally insufficient on count two of mouth-to-penis contact because Faulkner's testimony was inadmissible hearsay. Initially, we note that in determining legal sufficiency, we look at all the evidence in the record, including inadmissible evidence. *See Dewberry,* 4 S.W.3d at 740. Regardless, as we previously concluded, Faulkner properly qualified as an outcry witness, so her testimony about Tear putting W.T.'s penis into his mouth was admissible and was sufficient to support his conviction for count two. *See Kimberlin,* 877 S.W.2d at 828.

We conclude the jury could have found beyond a reasonable doubt that Tear digitally penetrated W.T.'s anus and that he put his mouth on W.T's penis. *See Young,* 14 S.W.3d at 753.

We also conclude the evidence is factually sufficient on both counts. Again, Tear argues the evidence supports his defensive theory on count one that he was administering medicine to W.T. when he used the KY Jelly. But, it was within the jury's purview to resolve any conflicts in the witnesses' testimony, as it was the sole judge of the weight and credibility of the witnesses and their testimony. *See Cain,* 958 S.W.2d at 408; *see also Empty,* 972 S.W.2d at 196. Again, despite Tear's claim, because Faulkner was properly an outcry witness, her testimony alone was sufficient evidence to support Tear's guilt on count two, and there is no contradictory evidence. *See Kimberlin,* 877 S.W.2d at 828. We cannot conclude, after examining all the evidence, that proof of Tear's guilt is so obviously weak that it undermines our confidence in the jury's findings of guilt, or that it is greatly outweighed by contrary proof. *See Johnson,* 23 S.W.3d at 11. Consequently, we overrule Tear's second, third, fourth, and fifth issues.

### Jury Charges

In his seventh issue, Tear contends the jury charge at the guilt/innocence phase misapplied the law to the facts. He claims the trial court impermissibly allowed the jury to convict him of none, one, or both of the offenses charged. In his eighth issue, Tear argues the jury charge at the punishment phase improperly allowed the jury to consider Tear's guilt on count one in assessing his punishment for count two.

#### 1. Standard of Review

When an appellant alleges jury charge error on appeal, we first determine

whether there is any error in the jury charge. If we conclude there is jury charge error, and a defendant failed to object to the error at trial, we may reverse only if the record shows that the error was so egregiously harmful that the defendant was denied a fair and impartial trial. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *Fails v. State,* 999 S.W.2d 144, 148 (Tex.App.-Dallas 1999, pet. ref'd), *cert. denied,* 532 U.S. 976, 121 S.Ct. 1613, 149 L.Ed.2d 477 (2001). Egregious harm includes errors affecting the case's foundation, or errors denying the defendant a valuable right, significantly affecting a defensive theory, or making the case for guilt or punishment clearly and substantially more compelling. *Hutch v. State,* 922 S.W.2d 166, 172 (Tex.Crim.App. 1996); *Lee,* 29 S.W.3d at 578. In determining the degree of harm, we look to the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information from the entire record. *Fails,* 999 S.W.2d at 148.

## 2. Applicable Law

■ Every act of sexual assault alleged in a separate count of an indictment is a separate criminal offense, not merely a different method of committing the same offense, for which the defendant may be convicted. *Francis v. State,* 36 S.W.3d 121, 124 (Tex.Crim.App.2000); *Mayo v. State,* 17 S.W.3d 291, 297 (Tex.App.-Fort Worth 2000, pet. ref'd).

■ A general objection is not sufficient to preserve error for appeal if the basis of the objection is not apparent to the trial court and opposing counsel. *Frierson v. State,* 839 S.W.2d 841, 852 (Tex. App.-Dallas 1992, pet. ref'd).

## 3. Application of the Law to the Facts

■ Tear argues in his seventh issue that the jury charge on guilt/innocence impermissibly allowed the jury to find Tear guilty of one offense, both offenses, or neither. Tear was charged in a single indictment with two counts of aggravated sexual assault of a child. The first paragraph alleged Tear digitally penetrated W.T.'s anus, and the second paragraph alleged Tear put W.T.'s penis in Tear's mouth. Each of the two paragraphs alleged a different offense Tear committed against W.T., not simply different methods by which he committed a single offense. Therefore, because Tear was indicted for committing two offenses of aggravated sexual assault against W.T., the charge properly allowed the jury to find Tear guilty of committing one offense, both offenses, or neither of the offenses. *See Francis,* 36 S.W.3d at 124. Furthermore, the court instructed the jury in the charge that they "should consider the allegations in each Count One and Count Two separately and reach a separate verdict on each count," and it submitted two separate verdict forms for the jury. From the record, we cannot conclude there was jury charge error. *See id.; Letson v. State,* 805 S.W.2d 801, 803–04 (Tex.App.-Houston [14th Dist.] 1990, no pet.) (defendant properly prosecuted in single indictment on two counts of assault, and two punishments proper where jury instructed to return verdict on each count of indictment and separate verdict forms submitted). Consequently, we overrule Tear's seventh issue.

■ In his eighth issue, Tear argues the jury charge at the punishment phase incorrectly allowed the jury to consider Tear's guilt on count one in deciding his punishment for count two. The punishment charge states:

We, the jury, having found the defendant *guilty in Count One* of the offense of aggravated sexual assault of a child younger than 14 years of age *as charged in Count Two* of the indictment assess

his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for _____. (Emphasis added.)

The jury filled in the blank with fifteen years.

We agree the language "in Count One" is erroneous. However, we disagree that its inclusion caused Tear egregious harm. A strict reading of the language would lead to an illogical conclusion: that Tear was charged in count two of the indictment with count one. Rather, as the jury was properly instructed, Tear was charged with two separate counts of aggravated sexual assault of a child. Clearly, the language "in Count One," rather than "in Count Two," was mistakenly inserted. The jury convicted Tear of both count one, which alleged digital penetration, and count two, which alleged mouth-to-penis contact.

The jury was properly instructed in the punishment charge as to the existence of two separate convictions for which they were to assess Tear's punishments. The charge included seven options for each offense from which the jury would choose in assessing his punishments. The charge presented the count one offense first, and the jury assessed Tear's punishment at ten years' confinement in the state penitentiary, probated for ten years. The charge then presented count two, where the jury assessed Tear's punishment at fifteen years' confinement in the state penitentiary. This punishment was within the range of punishment described in the options. The jury had just assessed Tear's punishment for count one before turning to count two. Tear did not object to the punishment charge. After reading the charge as a whole and looking to other relevant information in the record, we conclude there is nothing in the record demonstrating Tear suffered egregious harm. *See Al-manza*, 686 S.W.2d at 171. Tear was not denied a fair and impartial trial, nor did this affect the case's foundation, deny him a valuable right, significantly affect his defensive theory, or make the case for his punishment clearly and substantially more compelling. *See Hutch*, 922 S.W.2d at 172. Consequently, we overrule his eighth issue.

We affirm the trial court's judgments.