

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NOS. 02-10-00350-CR
### 02-10-00351-CR

JOHNNY PATTERSON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

------------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I.    Introduction

In seven points, Appellant Johnny Patterson appeals his convictions for one count of improper photography, one count of indecency with a child, and two counts of aggravated sexual assault of a child.  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

The State charged Patterson with one count of indecency with a child and two counts of aggravated sexual assault of a child in cause number F-2007-1144-B and two counts of improper photography and three counts of possession of child pornography in cause number F-2008-0517-B. On July 19, 2010, the day the jury was impaneled and sworn, Patterson filed a motion to quash the two counts of improper photography, arguing that the State omitted an essential element—lack of consent—and that this violated his due process rights. The trial court overruled this motion.

The jury found Patterson guilty on all counts in cause number F-2007-1144-B and assessed ten years' imprisonment for the indecency count, life imprisonment for each count of aggravated sexual assault, and an additional $10,000 fine for each count.[2] The jury also found him guilty of one count of improper photography, sentenced him to two years' imprisonment, and assessed a $10,000 fine.[3]

---

[2]Count one (aggravated sexual assault of a child by penetration) alleged, in pertinent part, that Patterson intentionally or knowingly caused the penetration of J.P.'s sexual organ by his finger on or about August 1, 2004. Count two (aggravated sexual assault of a child by contact) alleged, in pertinent part, that Patterson intentionally or knowingly caused his sexual organ to contact J.P.'s sexual organ on or about July 20, 2005.

[3]This count alleged, in pertinent part, that improper photography occurred on or about October 10, 2006.

2

### III.    Indictment

In his third point, Patterson complains of error in the improper photography indictment, arguing that the State failed to include the "without consent" element. However, if a defendant fails to object to an alleged error in an indictment before the date on which the trial on the merits commences, he forfeits the right to object to the error and may not raise the objection on appeal.  *See* Tex. Code Crim. Proc. Ann. art. 1.14(b) (West 2005); *Sanchez v. State*, 138 S.W.3d 324, 330 (Tex. Crim. App. 2004); *Ex parte Patterson*, 969 S.W.2d 16, 19 (Tex. Crim. App. 1998) ("Now a defect of substance in a charging instrument does not automatically render a judgment void.").  Therefore, by failing to file his motion to quash before trial began on July 19, 2010, Patterson has waived this complaint. *See Sanchez*, 138 S.W.3d at 329–30 (recognizing that trial on the merits begins when the jury is impaneled and sworn); *State v. Lohse*, 881 S.W.2d 171, 171 (Tex. App.—Houston [1st Dist.] 1994, no pet.) ("A motion to quash filed on the day of trial is too late.").  Accordingly, we overrule Patterson's third point.

### IV.    Jury Charge

In his fourth and fifth points, Patterson claims that the trial court denied him due process by instructing the jury on lack of consent when the State failed to include that element of improper photography in the indictment.

In contrast to the indictment, which serves a notice function to the defendant, the purpose of the jury charge is to "inform the jur[ors] of the applicable law and guide them in its application to the case." *Delgado v. State*,

3

235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App.), *cert. denied*, 516 U.S. 832 (1995). Therefore, the trial court "must ensure that all of the law applicable to the criminal offense that is set out in the indictment or information is incorporated into the jury charge." *Delgado*, 235 S.W.3d at 249.

The jury instructions may not expand the indictment. *Reed v. State*, 117 S.W.3d 260, 265 (Tex. Crim. App. 2003) (holding that the trial court improperly broadened the indictment by including "recklessly" in the jury instructions when the indictment alleged "intentionally" and "knowingly"). Instead, the instructions must distinctly set forth the law applicable to the case and set out all of the essential elements of the offense. *Martin v. State*, 200 S.W.3d 635, 639 (Tex. Crim. App. 2006). Indeed, "[a] jury charge is fundamentally defective if it omits an essential element of the offense or authorizes conviction on a set of facts that do not constitute an offense." *Green v. State*, 233 S.W.3d 72, 79–80 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (citing *Zuckerman v. State*, 591 S.W.2d 495, 496 (Tex. Crim. App. [Panel Op.] 1979)). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *See Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).

The version of section 21.15 of the penal code in effect on the date of the offense included the following:

4

> A person commits [improper photography] if the person: (1) photographs or by videotape or other electronic means visually records another: (A) without the other person's consent; and (B) with intent to arouse or gratify the sexual desire of any person . . . .

Act of June 20, 2003, 78th Leg., R.S., ch. 500, § 1, sec. 21.15(b)(1), 2003 Tex. Gen. Laws 1771, 1771 (amended 2007) (current version at Tex. Penal Code Ann. § 21.15(b) (West 2011)). Therefore, to properly set out all of the essential elements of improper photography, the jury charge had to include the "without consent" provision. *See id.*; *Green*, 233 S.W.3d at 81 (noting that the defective instruction failed to include the elements required to constitute the offense). Rather than broadening the theory set forth in the indictment, the inclusion of the "without consent" provision properly narrowed the offense because, absent this provision, the photography could not have been "improper." *See* Act of June 20, 2003, 78th Leg., R.S., ch. 500, § 1, sec. 21.15(b), 2003 Tex. Gen. Laws 1771, 1771 (amended 2007); *Curry v. State*, 30 S.W.3d 394, 402 (Tex. Crim. App. 2000) (noting that "[r]estraint is not restraint unless it is without consent" and stating that, because there are no alternatives to "without consent" in a restraint charge, there would be no need for the State to make this allegation in a restraint indictment in order to provide notice). Because we determine that the jury instruction was not erroneous, *see Abdnor*, 871 S.W.2d at 731–32, we overrule Patterson's fourth and fifth points.

## V. Outcry Witness

In his second and seventh points, Patterson complains that the trial court abused its discretion by allowing the forensic interviewer to be the outcry witness for both counts of aggravated sexual assault of a child.

### A. Trial Testimony

#### 1. J.P.

J.P. is Patterson's daughter, who was fourteen years old at the time of trial. She testified that when she was in the third grade, she awoke on her back to find her father lying on his side next to her in her bed. She testified that he had his hand underneath the top waistband of her pants and was touching her inappropriately. She testified that he was touching her "private parts"[4] but that at no point did his finger ever go inside of her private parts. J.P. stated that she moved his hand away, got out of bed, and told her mother what had happened.

J.P. testified that on another occasion, she was in the bathtub when Patterson entered the bathroom, undressed, and got into the bathtub with her. He asked J.P. to sit with him, and she did so, facing him. She testified that she felt his private part touch hers but that it did not appear that he was trying to penetrate her. She recalled that she did not tell her mother about this incident because Patterson told her not to, and she was scared.

---

[4]She clarified that by "private parts," she meant the "front part that you pee from."

6

J.P. testified that in March 2007, she spoke with a Child Protective Services (CPS) worker about the sexual abuse and discussed the abuse in great detail with Julianne McKamie,[5] a forensic interviewer at the Children's Advocacy Center. J.P. stated that other than McKamie, J.P. had not spoken in detail about the abuse with any other adult, except that she told her mother about the bedroom incident.

**2. J.P.'s Mother**

Jasmine,[6] Patterson's ex-wife and J.P.'s mother, testified that in August 2004, she went into J.P.'s bedroom to find J.P. lying in bed between the wall and Patterson. J.P. told her that she wanted to get up, so Jasmine helped her out of bed and asked her if anything was wrong. Jasmine testified as follows:

Q. What did she say happened?

A. She told me that Daddy had put his hands under her panties and was touching her privates.

Q. Did she say how he was touching her privates?

A. At first she just told me, you know, that she was -- you know, that he had touched her. And so then I asked her, well, you know, how did he touch you? And she just kind of kept telling me that, you know, he was touching her.

So, you know, I asked her, I was like, well, did he put his fingers on you or in you? And she just, well, he tried to put them in me. I

---

[5]By the date of trial, Julianne Khan had changed her last name to McKamie.

[6]J.P.'s mother's initials are also J.P., so for clarity, we will refer to her using the fictitious name "Jasmine."

asked her, did he put them all the way in you?  No, he didn't get them all the way in me but he was trying.

### 3. McKamie

During J.P.'s forensic interview[7] with McKamie on March 28, 2007, J.P. told McKamie that on the occasion in her bed, she woke up that morning to find Patterson lying next to her and touching her "front private."[8]  She said that his hand would touch her skin, that he would stop, and that his hand would go back underneath her clothes.  She also said that Patterson's finger pushed on her front private and went "inside and out."  She clarified that his finger "would just go in and out and then it would hurt really bad."  She said that "it really hurt" and that later it felt "like something was stinging."

Additionally, J.P. told McKamie that, on the occasion in the bathtub, Patterson's "private touched her private."  She elaborated that he was trying to put his private part "inside," specifically "the middle . . . in between the front and the back," the same way that his finger did on the occasion in her bed.  She also said that his finger did the same thing that it did on the occasion in her bed.  She stated that Patterson told her not to tell Jasmine about the bathtub incident but that she told Jasmine about it later.  J.P. said that other than talking to McKamie

---

[7]The State offered into evidence a segment of the DVD recording of J.P.'s forensic interview with McKamie.  Patterson objected to admission of the DVD, arguing that J.P. made her outcry statement to her mother rather than to McKamie and that, therefore, the DVD was hearsay.  The trial court admitted, and the State published before the jury, a thirteen-minute segment of the DVD.

[8]J.P. identified the "front private" as the part that a person uses to "go pee."

8

and to Jasmine, she had not talked to anyone else about Patterson touching her inappropriately.

### 4. Lindsey Green

Green testified that she was the CPS worker assigned to J.P.'s case. She arrived unannounced at the Patterson home and spoke with J.P. for twenty or thirty minutes before notifying law enforcement of the allegation and setting up a forensic interview with a member of the advocacy center. Green explained that CPS found, by a preponderance of the evidence, "reason to believe" that the allegations were true, but she clarified that this was not a judicial determination and was not a reasonable doubt standard.

### 5. Denton County Sheriff's Office Investigator Toby Crow

Investigator Crow testified that he read the CPS referral when he was assigned to investigate the allegations against Patterson. Next, he observed the forensic interview at the advocacy center, he interviewed Jasmine, he obtained a warrant, and Patterson was arrested.

## B. Applicable Law

The trial court has broad discretion in determining the admissibility of evidence. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). We review the trial court's decision to admit an outcry witness's testimony for an abuse of discretion and will not reverse the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* (recognizing that a clear abuse of

9

discretion must be established by the record); *see Tear v. State*, 74 S.W.3d 555, 558 (Tex. App.—Dallas 2002, pet. ref'd), *cert. denied*, 538 U.S. 963 (2003).

Article 38.072 creates a statutory exception to the general rule excluding hearsay evidence for a child abuse victim's initial outcry statement. *Klein v. State*, 191 S.W.3d 766, 779 (Tex. App.—Fort Worth 2006), *rev'd on other grounds*, 273 S.W.3d 297 (Tex. Crim. App. 2008); *see* Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2011). The outcry statute applies only to the child victim's statements that, in pertinent part, (1) describe the alleged offense and (2) were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(1)(A), (3). A statement about the offense is a statement that "in some discernible manner describes the alleged offense" and gives "more than a general allusion of sexual abuse." *Garcia*, 792 S.W.2d at 91.

The outcry exception is only available for one witness "unless the child revealed discrete occurrences of the same offense, or revealed different offenses, to separate adults." *Reynolds v. State*, 227 S.W.3d 355, 369 (Tex. App.—Texarkana 2007, no pet.); *see Quinones v. State*, Nos. 13-10-00140-CR, 13-10-00141-CR, 13-10-00142-CR, 2011 WL 3841586, at *9 (Tex. App.—Corpus Christi Aug. 25, 2011, no pet.) (mem. op., not designated for publication) ("[S]o long as separate outcry witnesses testify about separate offenses, the testimony of each is admissible.") (citing *Broderick v. State*, 35 S.W.3d 67, 73–74 (Tex. App.—Texarkana 2000, pet. ref'd) ("[A]n outcry witness is not person-specific,

10

but event-specific.")). For instance, "[i]f the child victim first described one type of abuse to one outcry witness, and first described a different type of abuse to a second outcry witness, the second witness could testify about the different instance of abuse." *Tear*, 74 S.W.3d at 559.

However, the outcry statement must actually describe different events and "not simply [be] a repetition of the same event as related by the victim to different individuals." *Broderick*, 35 S.W.3d at 73. Indeed, "the proper outcry witness is not to be determined by comparing the statements the child gave to different individuals and then deciding which person received the most detailed statement about the offense." *Brown v. State*, 189 S.W.3d 382, 386 (Tex. App.—Texarkana 2006, pet. ref'd).

Further, the child victim's statement to the outcry witness must describe the alleged offense, not just any offense. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(1)(A); *Brown*, 189 S.W.3d at 386 (reviewing victim's description of the offense and noting that it tracked the language of the statute defining the offense for which appellant was convicted); *see Pierce v. State*, No. 10-09-00320-CR, 2010 WL 2683052, at *1–2 (Tex. App.—Waco July 7, 2010, no pet.) (mem. op., not designated for publication) (holding that trial court did not abuse its discretion by permitting forensic interviewer's outcry testimony that appellant had inserted his tongue into victim's vagina when other witness's testimony that appellant had touched victim's vagina did not describe charged offense— appellant penetrating victim's sex organ with his tongue—in any discernible way);

11

*Sledge v. State*, No. 03-03-00092-CR, 2004 WL 438958, at *1–3 (Tex. App.—Austin Mar. 11, 2004, no pet.) (mem. op., not designated for publication) (holding that when both allegations arose out of the same act, allowing testimony of both outcry witnesses was not an abuse of discretion when one witness's testimony went to the indecency with a child allegation and other witness's testimony went to the penetration element of the aggravated sexual assault allegation); *Turner v. State*, 924 S.W.2d 180, 183 (Tex. App.—Eastland 1996, pet. ref'd) (holding that officer was the appropriate outcry witness because, even though victim told counselor that appellant penetrated her vagina with his finger, she told officer, not counselor, that appellant penetrated her with his penis, as alleged in the indictment).

## C. Analysis

### 1. Count One—Penetration

In his second point, Patterson contends that Jasmine was the proper outcry witness for count one.

#### a. Proper Outcry Witness

First, Patterson argues that Jasmine was the first person to whom J.P. made a statement that was more than a general allusion of sexual abuse, even though J.P. did not tell her that Patterson penetrated her sexual organ.

### i. Error

Because Jasmine testified as an outcry witness,[9] the question is whether McKamie was also a proper outcry witness. *See Fuller v. State*, No. 06-00-00032-CR, 2001 WL 691249, at *1–2 (Tex. App.—Texarkana June 21, 2001, pet. ref'd) (not designated for publication) (permitting mother to testify as the first person to whom the victim related the offense in a discernible manner—by stating that appellant pushed victim on the bed and laid on top of her—and also permitting detective to testify about the particular act—that appellant fondled her breasts—as alleged in the indictment) (citing *Broderick*, 35 S.W.3d at 73–74, and *Turner*, 924 S.W.2d at 183). Our analysis considers whether J.P.'s statement to McKamie (1) described the alleged offense in a discernible manner, *see* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(1)(A); *Garcia*, 792 S.W.2d at 91; *Brown*, 189 S.W.3d at 386, and (2) described different events such that the statement was "not simply a repetition of the same event as related by the victim to different individuals." *See Broderick*, 35 S.W.3d at 73.

A person commits aggravated sexual assault of a child by penetration when he, in pertinent part, intentionally or knowingly causes the penetration of a child's sexual organ by any means. Tex. Penal Code Ann. § 22.021(a)(1)(B)(i) (West Supp. 2011). As Patterson implicitly concedes, J.P.'s statement to

---

[9]Patterson does not complain that Jasmine was not a proper outcry witness but, rather, contends that she was the *only* proper outcry witness. Therefore, we do not address the trial court's decision to let Jasmine testify as an outcry witness. *See* Tex. R. App. P. 47.1.

13

McKamie sufficiently described this offense as alleged in count one of the indictment when she explained to McKamie that she awoke that morning in her bed to find Patterson's finger pushing on her front private part and going "inside and out." *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(1)(A), (3); *Garcia*, 792 S.W.2d at 91; *Sledge*, 2004 WL 438958, at *3. Because J.P. described the alleged offense to McKamie in a discernible manner, McKamie was a proper outcry witness as long as the published portion of J.P.'s statement to McKamie did not repeat the same events about which Jasmine testified. *See Garcia*, 792 S.W.2d at 91; *Brown*, 189 S.W.3d at 386; *Broderick*, 35 S.W.3d at 73 (holding that officer was not a proper outcry witness for the "touching" allegation because victim had previously told mother the same story in a discernible manner but that officer was the proper outcry witness for the allegation that appellant licked victim's genitals because officer was the first person to whom victim told that portion of the story).

McKamie was the first person to whom J.P. described the act of penetration in a discernible manner when J.P. said that Patterson's finger went "in and out" of her front private part. *See Garcia*, 792 S.W.2d at 91. While J.P. had previously told Jasmine that Patterson did not get his fingers "all the way in," it was within the zone of reasonable disagreement for the trial court to treat this ambiguous statement as a denial of penetration and, thus, not an outcry statement. *See Divine v. State*, 122 S.W.3d 414, 419 (Tex. App.—Texarkana 2003, pet. ref'd) ("[T]he child did not make an outcry about penetration to the

14

grandmother, but did make such an outcry to the interviewer. The fact the child denied penetration had occurred in her statement to the grandmother does not make the later outcry inadmissible, or change its nature."); *Tear*, 74 S.W.3d at 558. Therefore, it was not an abuse of discretion for the trial court to permit McKamie to be the outcry witness for the specific act of penetration. *See Tear*, 74 S.W.3d at 558; *Fuller*, 2001 WL 691249, at *1–2 (holding that trial court did not abuse its discretion by permitting detective to testify in "a limited fashion" about only the particular act not covered by mother's testimony).

However, when J.P. told McKamie that she woke up to find Patterson lying next to her, putting his hand underneath her clothing, and touching the skin on the outer portion of her front private part, J.P. had already made similar statements regarding this touching to Jasmine. Therefore, these statements to McKamie constituted "a repetition of the same event as related by the victim to different individuals." *See Broderick*, 35 S.W.3d at 73.

Instead of comparing these statements and deciding which person received the most detailed statement about the offense, *see Brown*, 189 S.W.3d at 386, we hold that Jasmine, not McKamie, was the proper outcry witness for these statements that, for the first time, described the touching in a discernible manner. *See Garcia*, 792 S.W.2d at 91. Therefore, the trial court abused its discretion by allowing the State to play a longer segment of the video than necessary—J.P.'s entire statement to McKamie regarding the August 1 incident—and not limiting the published portion of the video regarding this count

15

to the segment relating only to penetration. *See Tear*, 74 S.W.3d at 558; *Broderick*, 35 S.W.3d at 74 (holding that trial court abused its discretion by not limiting second outcry witness's testimony to only the additional act about which victim told him).

### ii. Harm

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal. Tex. R. App. P. 44.2. The admission of inadmissible hearsay constitutes nonconstitutional error, *Broderick*, 35 S.W.3d at 74, and it will be considered harmless if we, on examination of the entire record, are reasonably assured that the error did not influence the jury verdict or had no more than a slight effect, such as when "substantially the same evidence" is admitted elsewhere without objection. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991).

Here, J.P. testified without objection about the alleged touching. This evidence was substantially similar to the portion of McKamie's interview with J.P. that was improperly admitted. *See Mayes*, 816 S.W.2d at 88; *Fuller*, 2001 WL 691249, at *3 (holding that error in permitting two witnesses to testify to some degree about the same hearsay statement was harmless because the victim testified about the same events in detail); *Broderick*, 35 S.W.3d at 74 (holding that the trial court's error in admitting improper outcry witness testimony was harmless in part because the victim testified at trial about the same details).

16

Therefore, based on the record as a whole, we are reasonably assured that allowing the improper outcry testimony did not influence the jury verdict or had but a slight effect, and we find this error to be harmless. *See Johnson*, 967 S.W.2d at 417. Accordingly, we overrule this portion of Patterson's second point.

### b. Notice

Next, Patterson argues that the State failed to give sufficient notice of its intent to call McKamie as the outcry witness for count one because it had designated Jasmine, not McKamie, as the outcry witness for that count.[10]

### i. Error

Article 38.072 requires that the party intending to offer the outcry statement must timely provide the adverse party with notice of its intent to offer the statement, the name of the witness through whom it intends to offer the statement, and a written summary of the statement. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(1); *Long*, 800 S.W.2d at 547 (recognizing that these provisions are mandatory).

The State's timely motion to admit J.P.'s hearsay statements specified that it would seek to admit statements "made by [J.P.] to the witnesses [Jasmine] Patterson (Count I) and Julie [McKamie] (Count II & III)." Also, the State attached a written summary detailing J.P.'s statement to McKamie, which

---

[10]Patterson's hearsay objection at trial preserved his notice complaint. *See Long v. State*, 800 S.W.2d 545, 547–48 (Tex. Crim. App. 1990) (holding that a defendant's hearsay objection is sufficient to preserve error for any failure to comply with article 38.072).

included the statements that we set out above describing penetration. Therefore, the State complied with the statute insofar as the State notified Patterson of its intent to offer J.P.'s statement to McKamie and provided Patterson with a written summary of the statement. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(1). However, a "statement" under article 38.072 is one that describes the alleged offense, not just any offense, and an outcry witness is offense-specific. *See id.* § 2(a)(1)(A); *Broderick*, 35 S.W.3d at 73. Therefore, we conclude that because the State indicated that Jasmine, rather than McKamie, would be the witness through whom it intended to offer J.P.'s statement regarding count one, the State did not strictly comply with article 38.072's requirement to identify "the name of the witness through whom it intends to offer the statement." *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(1)(B).

### ii. Harm

Because the State failed to comply with this mandatory notice requirement, we must again conduct a harm analysis pursuant to rule 44.2(b) and disregard the error if it did not affect Patterson's substantial rights. *See* Tex. R. App. P. 44.2(b); *Dorado v. State*, 843 S.W.2d 37, 38 (Tex. Crim. App. 1992); *Wheeler v. State*, 79 S.W.3d 78, 84 (Tex. App.—Beaumont 2002, no pet.). The purpose of article 38.072's notice requirement is to prevent a defendant from being surprised at trial by the outcry testimony. *Gabriel v. State*, 973 S.W.2d 715, 719 (Tex. App.—Waco 1998, no pet.). Therefore, in deciding if a failure to comply with this requirement is harmless error, we review the record to determine whether

18

Patterson was actually surprised by the outcry evidence and was prejudiced by a lack of notice.  *See Zarco v. State*, 210 S.W.3d 816, 832 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Upton v. State*, 894 S.W.2d 426, 429 (Tex. App.—Amarillo 1995, pet. ref'd).

Patterson did not argue actual surprise either at trial or in his brief, nor does the record reflect that he was surprised by the outcry witness evidence. *See Padilla v. State*, 278 S.W.3d 98, 107 (Tex. App.—Texarkana 2009, pet. ref'd) (stating that appellant failed to identify any harm and that, even if he had, it would not have been supported by the record); *Zarco*, 210 S.W.3d at 832–33 (holding that appellant was not harmed because he did not argue actual surprise at trial or on appeal and because he could not reasonably have done so based on the record).  Instead, the record shows that Patterson received timely notice of the statement itself; the State only failed to specify that it would offer this statement to prove count one.  *See Zarco*, 210 S.W.3d at 832–33 ("In actuality, appellant did receive sufficient notice of the statement itself; only the identity of the witness information was tardy.").  Therefore, Patterson had actual notice of the State's intent to use the outcry testimony and was not harmed by the notice error.  *See Berotte v. State*, 992 S.W.2d 13, 19 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) ("[A]ny error was harmless because appellant had actual notice of the State's intent to use the outcry testimony."); *Gottlich v. State*, 822 S.W.2d 734, 737 (Tex. App.—Fort Worth 1992, pet. ref'd) ("[W]e hold that [appellant] had adequate notice of the actual content of the outcry statement and could not have

19

suffered any surprise or harm from the outcry testimony."), *overruled on other grounds by Curry v. State*, 861 S.W.2d 479 (Tex. App.—Fort Worth 1993, pet. ref'd). Accordingly, we overrule Patterson's second point.

## 2. Count Two—Contact

In his seventh point, Patterson argues that Green, rather than McKamie, was the appropriate outcry witness for count two. Specifically, Patterson claims that it is clear that J.P. described aggravated sexual assault of a child by contact to Green because Green spoke with J.P. for twenty minutes, Green had reason to believe that the allegations were true, and J.P.'s statement to Green led to Patterson's arrest.

A person commits aggravated sexual assault of a child by contact when he, in pertinent part, intentionally or knowingly causes his sexual organ to contact the sexual organ of a child. Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii) (West Supp. 2011). We may only find an abuse of discretion if it is established by the record, *see Garcia*, 792 S.W.2d at 92, and the record reflects that J.P. told McKamie that Patterson caused his sexual organ to contact her sexual organ during the bathtub incident. Therefore, J.P. described the alleged offense in a discernible manner such that McKamie was the appropriate outcry witness as long as she was the first adult to whom J.P. made this statement. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(1)(A), (3); *Garcia*, 792 S.W.2d at 91. The record is devoid of any indication that J.P. made a statement to Green that related to this allegation. Because we cannot determine from the record what

20

J.P. said to Green, we conclude that the trial court did not abuse its discretion by ruling, on the evidence before it, that McKamie was the proper outcry witness for count two. *See Garcia*, 792 S.W.2d at 91–92 (holding that, in the absence of evidence in the record regarding what victim told "witness A," trial court did not abuse its discretion by ruling that "witness B" was the proper outcry witness). Accordingly, we overrule Patterson's seventh point.

## VI.    Sufficiency

In his first and sixth points, Patterson complains that the evidence at trial was insufficient to support his convictions on one count of aggravated sexual assault of a child and on improper photography.

## A.  Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638.  The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04

21

(West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638.

## B. Count One—Penetration

In his first point, Patterson argues that the evidence of penetration was insufficient because J.P.'s statement to McKamie did not prove penetration beyond a reasonable doubt.

### 1. Additional Trial Testimony

Paula Fornara, a sexual assault nurse examiner, testified that the hymen is "a collar around the opening to the vagina." She further testified that before a female goes through puberty, the hymen is very sensitive and that if someone tried to touch or penetrate it, it would be excruciatingly painful.[11]

---

[11]The State recalled Jasmine, who testified that J.P. began puberty in the summer of 2008 at the end of her sixth-grade year.

22

## 2. Analysis

"[A] child victim's outcry statement alone can be sufficient to support a conviction for aggravated sexual assault." *Tear*, 74 S.W.3d at 560. While certainly not uncontroverted, J.P.'s statement to McKamie that Patterson's finger pushed on her private part, went "inside and out," and caused her pain supports the jury's finding that Patterson intentionally caused his finger to penetrate J.P.'s sexual organ. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i); *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) (holding that evidence was sufficient to prove penetration when victim testified that appellant touched the outside of her vagina and that she felt pain and discomfort when he pressed on it). Furthermore, the pain that J.P. described as hurting "really bad" and later feeling "like something was stinging" is consistent with the excruciating pain that Fornara testified is typical if someone were to touch or penetrate the hymen surrounding the opening of the vagina of a prepubescent female, which J.P. was at the time. Based on J.P.'s outcry alone, there was sufficient evidence to support the jury's finding of guilt on count one of digital penetration. *See Tear*, 74 S.W.3d at 561.

It was the jury's responsibility to draw inferences from J.P.'s statement to Jasmine that Patterson tried to get his fingers inside of her but did not get them in all of the way. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638. And we do not substitute our judgment for that of the jury, *see Williams*, 235 S.W.3d at 750, but instead presume that the jury resolved any

23

conflicting inferences in favor of a finding of digital penetration and defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638. In doing so, we conclude that it was reasonable for the jury to infer that, based on the cumulative force of J.P.'s statements to McKamie, J.P.'s ambiguous statement to Jasmine supported the jury's finding that Patterson's finger penetrated J.P.'s sexual organ. *See Steadman v. State*, 280 S.W.3d 242, 247–48 (Tex. Crim. App. 2009) ("[T]actile contact beneath the fold of complainant[']s external genitalia amounts to penetration within the meaning of the Aggravated Sexual Assault statute, since vaginal penetration is not required, but only penetration of the 'female sexual organ.'" (quoting *Vernon*, 841 S.W.2d at 409–10)); *Hooper*, 214 S.W.3d at 16–17.

It was also the jury's responsibility to weigh this evidence with J.P.'s conflicting testimony that Patterson's finger did not penetrate her at any point. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638. Again, we may not re-evaluate the weight and credibility of this evidence and substitute our judgment for that of the jury. *See Williams*, 235 S.W.3d at 750. We only conclude that it is reasonable, based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict, for the jurors, who were able to observe J.P.'s demeanor both on the stand and in her forensic interview, to have given little weight to or discredited J.P.'s recantation testimony that occurred almost six years after the August 2004 incident. *See Hooper*, 214 S.W.3d at 16–17; *Chambers v. State*, 805 S.W.2d

459, 461 (Tex. Crim. App. 1991) ("The jury observed the complainant's demeanor and was entitled not only to reconcile any such conflicts [in her testimony], but even to disbelieve her recantation."). We defer to that resolution and conclude that a rational trier of fact could have found the element of penetration beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638. Accordingly, we overrule Patterson's first point.

## C. Count Five—Improper Photography

In his sixth point, Patterson argues that the evidence at trial was insufficient to prove improper photography.

### 1. Evidence at Trial

Jasmine testified that she believed pictures had been taken of her while she slept one night because she awoke to flashes. She later found on Patterson's computer many nude photographs of herself, four of which the trial court admitted as State's exhibits two through five and the State published to the jury. Jasmine testified that she does not like being photographed and that she did not consent to have nude photographs of her taken. She believed that Patterson took the photographs because nobody else had access to their master bathroom or bedroom where the photographs were taken and because she found the photographs on Patterson's computer, to which nobody else had access. She also stated that she believed she was the individual depicted in the

photographs because she recognized her body, the clothes next to her, and her bed, but she admitted on cross-examination that the individual could be anybody.

## 2. Analysis

In assessing the sufficiency of the evidence of improper photography, we consider whether any rational trier of fact could have found the essential elements of this offense—specifically, the alleged actor, the prohibited conduct, the victim, the requisite intent, and the lack of consent—beyond a reasonable doubt. *See* Act of June 20, 2003, 78th Leg., R.S., ch. 500, § 1, sec. 21.15(b), 2003 Tex. Gen. Laws 1771, 1771 (amended 2007); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638.

Jasmine's testimony that she believed that Patterson was the one who took the nude photographs because nobody else had access to their bedroom, their bathroom, or Patterson's computer supports the jury's finding that Patterson was the actor who engaged in the prohibited conduct of taking photographs. *See* Act of June 20, 2003, 78th Leg., R.S., ch. 500, § 1, sec. 21.15(b), 2003 Tex. Gen. Laws 1771, 1771 (amended 2007); *Cooper v. State*, 326 S.W.3d 757, 762–63 (Tex. App.—Texarkana 2011, pet. granted) (concluding that the evidence was insufficient to prove that appellant recorded the videos because there was evidence that, rather than appellant having sole possession of the location from which the videos were taken, several other people had access to the location over a period of time).

Moreover, her testimony that she never gave Patterson permission to take those photographs because she does not like being photographed and that he took them while she was asleep supports the jury's finding of the "without consent" element. *See* Act of June 20, 2003, 78th Leg., R.S., ch. 500, § 1, sec. 21.15(b), 2003 Tex. Gen. Laws 1771, 1771 (amended 2007). Further, the content of the photographs supports the reasonable inference that Patterson took the photographs with the intent to arouse or gratify his or another person's sexual desires because the depicted individual was naked. *See id.* Additionally, Jasmine's testimony that she was the woman depicted in the photographs supports the jury's finding of this final element of improper photography. While she also conceded on cross-examination that she supposed the person could be anybody, the jurors are the sole judge of the weight and credibility of the evidence, *see Brown*, 270 S.W.3d at 568, and we may not re-evaluate this and substitute our judgment for theirs. *See Williams*, 235 S.W.3d at 750. Instead, we presume that the jurors resolved this conflicting testimony in favor of the verdict, and we defer to their resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638.

Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found the above elements of improper photography beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638. Accordingly, we overrule Patterson's sixth point.

27

## VII.    Conclusion

Having overruled each of Patterson's points, we affirm the trial court's judgments.


PER CURIAM

PANEL:  MCCOY, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 19, 2012