NUMBER 13-09-127-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

REYMUNDO CASTILLO AKA
JOKER,                                           Appellant,

 

v.

 

THE STATE OF TEXAS,                                                  Appellee.

                                                                                                                     
  

 

On appeal from the 156th
District Court 

of Bee County, Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Justices
Garza, Benavides, and Vela 

Memorandum Opinion by
Justice Vela

                                                                                                                                    

            A jury convicted appellant, Reymundo Castillo
aka Joker, of three counts of aggravated sexual assault of a child (counts one,
two, and four), see Tex. Penal Code Ann. § 22.021(a)(1)(B),
(2)(B) (Vernon Supp. 2010), and two counts of indecency with a child by
exposure (counts three and five).  See id. § 21.11(a)(2)(A).  The
trial court assessed punishment at sixty-five years’ imprisonment for each count
of aggravated sexual assault and ten years’ imprisonment for each count of
indecency with a child.  The trial court assessed a $1,500 fine for count one,
ordered the sentence for count two to run consecutively with the sentence for
count one, and ordered the sentences for counts three, four, and five to run
concurrently.

 In four issues, Castillo challenges the
legal and factual sufficiency of the evidence to support his convictions.  We
affirm. 

I. Factual Background

A. State’s Evidence

            In the evening of August 14, 2007,
six-year-old V.V. arrived at “Beeville hospital” with her mother[1]
and stepfather, Reymundo Castillo.  Alicia Cowley, a sexual assault nurse
examiner, testified V.V. was crying and had painful urination.  She stated that,
because “[i]t looked like [V.V. had] herpes” and would need “significant
treatment,” she was taken by ambulance to Driscoll Children’s Hospital that
evening.

The next day, Nancy Harper, M.D., a
pediatrician at Driscoll Children’s Hospital who had specialty training in
child abuse and neglect, examined V.V. and stated that she “had extensive
ulceration.  She had these blisters and ulcers on her labia pretty much from
the top of her private down along the side to the bottom on the right.”  She
stated that tests showed that V.V. had two sexually transmitted diseases (STDs)—herpes
and chlamydia.

During Dr. Harper’s direct-examination,
the prosecutor introduced State’s exhibit 3, which is a document showing that
on January 9, 2008, Castillo visited a clinic in Beeville and that he tested
“negative for chlamydia.”  When the prosecutor, in reference to State’s exhibit
3, asked Dr. Harper, “So does that mean that he [Castillo] couldn’t have had
sex with [V.V.]?”, she said, “No.  It just means he could have had treatment”
for chlamydia.

            On cross-examination, Dr. Harper testified
she believed V.V. “was sexually abused” and said it was “[p]ossible” Castillo
never had chlamydia.  She also testified that V.V.’s sexual-assault exam was
normal, except that she had chlamydia and herpes.  She said that herpes is
“very rarely not” transmitted sexually.  She also stated that Castillo’s test
for herpes was “negative”; however, she did not know if he had a “blood test or
a swab” to test for herpes.  She said that “[b]lood tests for herpes are
different because they are notoriously not helpful.”

V.V., who was eight years old at the
time of trial, testified that while living in Beeville, she shared a room with
her two sisters and that her mother stayed in another room with “Rey,” whom V.V.
identified as appellant.  During the State’s case-in-chief, the prosecutor
showed V.V. a boy doll and a girl doll.  The record reflects that V.V.
identified the “male sexual organ” of the boy doll as the “front part” and that
she identified “the front private part” and the “back private part” of the girl
doll.

V.V. testified that on more than one
occasion, Castillo came into her room and removed her nightgown and panties. 
He then took off his pants, and she saw his “private part.”  When asked by the
prosecutor if his private part was “little” or “big,” she said, “Big.”  She
testified Castillo would then “get on top of me.”  When the prosecutor asked
her, “And when he got on top of you his private part was out of his pants?  Was
it out of his underwear?”, she said, “Yes.”  She said she “was trying to get
away” from him, but he would put one hand on her mouth and use his other hand
to hold her hands.  When the prosecutor asked her, “And . . . what did you do
when he was finished?  Did you ever go to the bathroom?”, she said, “Yes” and
testified that she saw “[w]hite spots.”  After saying this, V.V. said, “And
then he [Castillo] would tell me to go over there in the living room.”  She
stated that while in the living room, “[h]e would want me to go over there by
him and to put my mouth on his front part.”  When the prosecutor asked her, “So
what would he make you do?”, she said, “He would put my mouth on his front
part.”  Next, the prosecutor asked her, “And . . . did you look . . . at his
front part?”  To this, she said, “Yes” and stated that “[i]t had white things
on it.”  When asked “[l]ike what kind of white things,” she said, “Like
sores.”  When the prosecutor asked her, “When he would make you put your mouth
on his private where did his private go?  Was it just right on the lips or was
it inside the mouth?”, she said, “Inside of my mouth.”  When the prosecutor
asked her, “Did you ever go to the bathroom after he put his private in your
mouth?”, she answered, “Yes” and said that she “checked” her “front part, and
it was starting to bleed.”

The prosecutor also asked V.V., “Do you
remember anything about him [Castillo] using his fingers?”  To this, she said,
“Yes” and stated that “[h]e put them in my back part.”  She said he did this to
her while she was “standing up.”  V.V. testified she was scared of Castillo
“[b]ecause he said if I ever told anybody he would spank me.”  She testified
that Castillo “would hit me with the belt” on her “bottom.”       

On cross-examination, when defense
counsel asked V.V., “You use[d] to get those rashes all the time, didn’t you?”,
she said, “Yes.”  Next, defense counsel asked her, “Before even Rey [Castillo]
was around, right?”  To this, she said, “Yes.”  When defense counsel asked her,
“So is it possible that this happened somewhere else and it wasn’t Rey at
all?”, she said, “It was Rey all.”  Next, defense counsel asked her, “It was
Rey all.  Are you sure?  Because this is very important.”  In response, she
said, “Yes.”

On re-direct-examination, when the
prosecutor asked V.V., “And so the very first time that you got these sores was
when you went to the hospital, right?”  Your mom took you to the hospital when
you got those?”, she said, “Yes.”  Next, the prosecutor asked her, “But then
they came back after that first time?”  To this, she said, “Yes.”

Monica Pena, a family based safety
services worker for the Texas Department of Family and Protective Services,
testified she wanted Castillo to undergo a test for STDs.  However, he did not
have the test when she asked him to take it.  Instead, he waited until the
“beginning” of 2008 to take the test.

Stephanie Diaz, an investigator
supervisor with Child Protective Services, testified that V.V. is not married
to Castillo.  On cross-examination, Diaz testified that CPS requested that V.V.
and Castillo undergo testing for STDs.  In January 2008, Castillo was tested
for chlamydia and gonorrhea, and the results were negative.  She stated CPS did
not have Castillo tested for herpes   She said that, “my understanding is that
it’s difficult to detect herpes in blood work and that you would have to have
an actual outbreak” of herpes in order to test for that disease.

B. Defense Evidence

            Castillo’s mother, Ninfa Castillo, testified
that at some point, Castillo, V.V.’s mother, and V.V.’s three daughters,
including V.V., lived with her.  She did not remember V.V. being sad, upset, or
crying.  She said that V.V. and her two sisters did not appear to be afraid of
Castillo.

            Melissa Rosales testified she knew Castillo
for fifteen years and that he is the father of her two sons.  She had never
been infected with any type of STD and said that their two sons had never been
infected with either chlamydia or herpes.

            Castillo testified he met V.V.’s mother in
December 2005 and that he “started really seeing” V.V.’s mother in early
January 2006.  During that month, he and V.V.’s mother began living together in
a Beeville apartment with her three daughters, including V.V.  He married
V.V.’s mother in March 2006, and at some point, he, V.V.’s mother, and her three
daughters moved into a rental house in Beeville.  Later, they moved in with
Castillo’s parents.  

            Castillo testified he never inappropriately
touched either V.V. or her two sisters.  He denied having sexual intercourse
with either V.V. or her two sisters.  He also denied that he had tried to make
one of these girls perform oral sex on him, and he denied that he “stuck [his]
finger inside one of their rear ends.”  He testified that he did not have
herpes or chlamydia.

            On cross-examination, Castillo testified he
had “a rash twice” and explained that, “I got some piercings on my privates,
and where they did the incision is where the rash was at.”  He said he “never
had oozing sores on [his] penis” and said that he “never took antibiotics.” 
When the prosecutor asked him, “Rey, you don’t have a very good reputation, do
you?”, he said, “No, I sure don’t.”

 

II. Discussion

A. Aggravated Sexual Assault Of A Child

            In issue one, Castillo argues the evidence is
legally insufficient to support his three convictions for aggravated sexual
assault of a child (counts one, two, and four).  In issue two, he argues the
evidence is factually insufficient to support these convictions.  We review his
sufficiency complaints under only the standard set out in Jackson v. Virginia,
443 U.S. 307, 319 (1979).  See Brooks v. State, 323 S.W.3d 893, 895
(Tex. Crim. App. 2010) (overruling Clewis v. State, 922 S.W.2d 126 (Tex.
Crim. App. 1996)).

1. Standard Of Review

            “When
conducting a legal sufficiency review, a court must ask whether ‘any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt’—not whether ‘it believes that the evidence at
trial established guilt beyond a reasonable doubt.’”  Laster v. State,
275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting Jackson, 443 U.S. at
318-19) (emphasis in original).  “In doing so, we assess all of the evidence
‘in the light most favorable to the prosecution.’”  Id. (quoting Jackson,
443 U.S. at 319).  “After giving proper deference to the fact finder’s role, we
will uphold the verdict unless a rational fact finder must have had reasonable
doubt as to any essential element.”  Id. at 518.  We must presume that
the fact finder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson, 443 U.S. at 326.

            Our review of a legal sufficiency challenge
should be examined under the principles of review for a hypothetically correct
jury charge.  Grotti v. State, 273 S.W.3d 273, 280-81 (Tex. Crim. App.
2008).  “‘Such a charge [is] one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State’s
burden of proof, or unnecessarily restrict the State’s theories of liability,
and adequately describes the particular offense for which the defendant was
tried.’”  Villarreal v. State, 286 S.W.3d 321, 327 (Tex. Crim. App.
2009) (quoting Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997)).

2.
Applicable Law

            Section 22.021(a) of the penal code provides,
in relevant part, that a person commits the offense of aggravated sexual
assault of a child if the person:  (B) intentionally or knowingly:

(i)         causes
the penetration of the anus or sexual organ of a child by any

            means;

 

(ii)
      causes the penetration of the mouth of a child by the sexual organ of 

            the
actor;

 

(iii)
     causes the sexual organ of a child to contact or penetrate the mouth, 

            anus,
or sexual organ of another person, including the actor;

 

(iv)
     causes the anus of a child to contact the mouth, anus, or sexual 

            organ
of another person, including the actor; or

 

(v)
      causes the mouth of a child to contact the anus or sexual organ of 

            another
person, including the actor; and

 

(2) if:

 

*
* *

(B)      the victim
is younger than 14 years of age. . . .

 

Tex. Penal Code Ann. §
22.021(a)(1)(B)(i)-(v), (2)(B).  A child victim’s testimony alone is sufficient to support
a conviction for aggravated sexual assault of a child. 
Perez v. State, 113 S.W.3d 819, 838 (Tex. App.–Austin 2003, pet. ref'd);
see Tex. Code Crim. Proc. Ann.
art. 38.07 (Vernon 2005); Tear v. State, 74 S.W.3d 555, 560 (Tex.
App.–Dallas 2002, pet. ref'd).

To prove count one as set forth in the
charge, the State was required to establish beyond a reasonable doubt that
Castillo “intentionally or knowingly cause[d] the penetration of the mouth of
[V.V.], a child who was then and there younger than 14 years of age and not the
spouse of the defendant, by the defendant’s sexual organ . . . .”  V.V.
testified that after Castillo got off of her, he would tell her to go into the
living room.  While V.V. and Castillo were in the living room, he would put his
“front part” inside of her mouth.

To prove count two as set forth in the
charge, the State was required to establish beyond a reasonable doubt that
Castillo “intentionally or knowingly cause[d] the penetration of the anus of
[V.V.], a child who was then and there younger than 14 years of age and not the
spouse of the defendant, by defendant’s finger, . . . .”  When the prosecutor
asked V.V., “Do you remember anything about him [Castillo] using his fingers?”,
she said, “Yes.”  She testified that when she was standing up, “[h]e put them
in my back part.” 

To prove count four as set forth in the
charge, the State was required to establish beyond a reasonable doubt that
Castillo “intentionally or knowingly cause[d] the penetration of the sexual
organ of [V.V.], a child who was then and there younger than 14 years of age
and not the spouse of the defendant, by defendant’s sexual organ, . . . .” 
V.V. testified that after Castillo removed her nightgown and panties, he would
take off his pants.  After removing his pants, he would “get on top of” her. 
When the prosecutor asked her, “And when he got on top of you his private part
was out of his pants?  Was it out of his underwear?”, she said, “Yes.”  Even
though V.V. did not testify[2]
that Castillo penetrated her sexual organ with his sexual organ, she testified
that after he got off of her, he engaged in oral sex with her.  She said that
after he put his “private” in her mouth, she “checked” her “front part, and it
was starting to bleed.”  In addition, she testified his “front part” had “white
things on it.”  When the prosecutor asked her, “Like what kind of white
things,” she said, “Like sores.”  Furthermore, the record showed that on August
14, 2007, V.V. was taken to Driscoll Children’s Hospital and that Dr. Harper
later diagnosed her with two STDs—herpes and chlamydia.  While Castillo and
V.V.’s mother were at Driscoll Children’s Hospital with V.V., they were
interviewed by a social worker, Lisa Porterfield.  Porterfield testified
Castillo told her he had been tested before for STDs and that “this was prior
to he and [V.V.’s] mother becoming involved with each other, and . . . that . .
. they had . . . been together about a year-and-a-half to two years.”  He told
Porterfield “that the STD testing that he had gotten was negative and then
shortly after they [he and V.V.’s mother] were together . . . he had developed
a rash to his private area, and because his STD testing was negative he had
sent [V.V.’s] mother to go get tested.”  Castillo told her that V.V.’s mother
“was told that she was diagnosed with herpes.”  Porterfield stated that V.V.’s
mother had been infected with herpes for “a couple of years.”

Dr. Harper testified that Castillo said
that “he had had this rash reoccur on several occasions. . . .”  She said this
“is very typical for the herpes virus.”  When the prosecutor asked Dr. Harper, “[W]hen
is the appropriate time to be tested for herpes?”, she said, “You have to
actually have not only ulcers but some of the postule [sic] or blisters, . . .
.”  When asked, “And on a male where would those blisters most normally be?”,
she explained that “for a male, they could be on the head of your penis.  They
could be on the shaft of your penis.  They could be down around the base of
your penis.”  She testified that if a man did not want to have a positive
herpes test, he could make sure he did not have any sores when he got tested. 
With respect to transmission of the herpes virus, Dr. Harper stated that, “[w]e
call herpes infections highly suspicious for sexual abuse” because “[t]hey
require close sort of steady sexual contact, genital-to-genital contact.”  She
said herpes is “[v]ery rarely” transmitted nonsexually.

Based upon this evidence, a rational
jury could reasonably conclude that Castillo had herpes and that he transmitted
this disease to V.V. by penetrating her sexual organ with his sexual organ.

After viewing all of the evidence in the
light most favorable to the verdict, a rational jury could have reasonably
concluded beyond a reasonable doubt that while V.V. was younger than fourteen
years of age and not Castillo’s spouse, Castillo intentionally or knowingly (1)
caused the penetration of her mouth with his sexual organ, (2) caused the
penetration of her anus by his finger, and (3) caused the penetration of her
sexual organ with his sexual organ.  Issues one and two are overruled. 

B.
Indecency With A Child By Exposure

            In issue three, Castillo argues the evidence
is legally insufficient to support his convictions for indecency with a child
by exposure (counts three and five).  In issue four, he argues the evidence is
factually insufficient to support his convictions for these same offenses.

1. Applicable Law

Section 21.11(a) of the penal code
provides that a person commits the offense of indecency with a child by
exposure “if, with a child younger than 17 years of age, . . . the person:  . .
. (2) with intent to arouse or gratify the sexual desire of any person:  (A)
exposes the person’s anus or any part of the person’s genitals, knowing the
child is present . . . .”  Tex. Penal
Code Ann. § 21.11(a)(2)(A); see Breckenridge v. State, 40 S.W.3d
118, 128 (Tex. App.–San Antonio 2000, pet. ref’d).  A fact finder can infer the
requisite, specific intent to arouse or gratify the sexual desire of any person
“from the defendant’s conduct, remarks, and all surrounding circumstances.”  Id.
(citing McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981)). 
The testimony of a child victim alone is sufficient to support a conviction for
indecency with a child.  Perez, 113 S.W.3d at 838; see Tex. Code Crim. Proc. Ann. art. 38.07; Tear,
74 S.W.3d at 560.

2. Analysis

To prove counts three and five as set
forth in the charge, the State was required to establish beyond a reasonable
doubt that Castillo “did then and there, with intent to arouse or gratify the
sexual desire of the defendant, intentionally or knowingly expose the defendant’s
genitals, knowing that [V.V.], a child younger than 17 years of age and not the
defendant’s spouse, was present, . . . .”

 V.V. testified that on one occasion,
Castillo had removed her nightgown and panties and then took off his pants. 
When he took off his pants, she saw his “private part.”  When asked by the
prosecutor if his private part was “little” or “big,” she said, “Big.”  She
testified he would then “get on top of me.”  When the prosecutor asked her,
“And when he got on top of you his private part was out of his pants?  Was it
out of his underwear?”, she said, “Yes.”  She testified that on another
occasion, Castillo told her to go to the living room.  She stated that while in
the living room, “[h]e would want me to go over there by him and to put my
mouth on his front part.”  When the prosecutor asked her, “And . . . did you
look . . . at his front part?”, she said,  “Yes”, and stated that “[i]t had
white things on it.”  When asked “[l]ike what kind of white things,” she said,
“Like sores.”  Based upon V.V.’s testimony, a rational jury could have found
beyond a reasonable doubt that Castillo, on at least two occasions, while
knowing that V.V., a child younger than seventeen years of age and not his
spouse, was present, exposed his genitals to her with intent to arouse or
gratify his sexual desire.  We hold the evidence is legally sufficient to
support his convictions for indecency with a child by exposure.  Issues three
and four are overruled.

III. Conclusion

            We affirm the trial court’s judgment.

 

 

                                                                                         ROSE
VELA

                                                                                         Justice

 

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the  

3rd day of March, 2011.









[1]
V.V.’s mother did not testify, and she will remain anonymous.





[2]
We note that the prosecutor did not ask V.V. if appellant penetrated her sexual
organ with his sexual organ, and V.V. never denied that he did not penetrate
her sexual organ with his sexual organ.