# NOS. 12-13-00225-CR
# 12-14-00039-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DANNY RAY LUSK,*<br>*APPELLANT* | § | *APPEALS FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Danny Ray Lusk appeals his convictions in cause numbers 12-13-00225-CR (trial court cause number 19,241) and 12-14-00039-CR (trial court cause number C-18,897) for the offenses of aggravated sexual assault of a child and indecency with a child. He raises five issues on appeal. We modify and affirm as modified.

### BACKGROUND

A Henderson County grand jury returned two multiple count indictments against Appellant for the offenses of aggravated sexual assault of a child and indecency with a child. The indictment in cause number 12-13-00225-CR alleged two counts of aggravated sexual assault of a child and one count of indecency with a child. The indictment in cause number 12-14-00039-CR alleged two counts of aggravated sexual assault of a child. Appellant pleaded "not guilty" to both indictments. The cases were consolidated, and a jury found Appellant guilty on all counts.

In cause number 12-13-00225-CR, the jury assessed punishment at imprisonment for life for counts one and two, twenty years of imprisonment for count three, and a $5,000 fine on each

count. In cause number 12-14-00039-CR, the jury assessed punishment at imprisonment for life and a $5,000 fine for both counts. This appeal followed.[1]

## ADMISSION OF EVIDENCE—STANDARD OF REVIEW

In his first and fourth issues, Appellant challenges the trial court's admission of certain evidence. When the trial court's admission of evidence is challenged on appeal, we review the trial court's ruling for abuse of discretion. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990); *see also Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990) (trial court's designation of outcry witness reviewed for abuse of discretion). Absent an abuse of discretion, we will not disturb a trial court's ruling on appeal. *See Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

## OUTCRY WITNESS TESTIMONY

In his first issue, Appellant contends the trial court committed reversible error by ruling certain hearsay testimony met the requirements of Article 38.072 of the code of criminal procedure and, therefore, was admissible.

**Applicable Law**

Article 38.072 of the Texas Code of Criminal Procedure is a rule of admissibility of hearsay evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2014); *Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005). The legislature enacted Article 38.072 to make admissible the testimony of the first adult in whom a child confides regarding sexual abuse because it is often traumatic for children to testify in a courtroom setting, especially about sexual offenses committed against them. *Id*. at 810–11. The child's statement to the adult is commonly known as the "outcry," and the adult who testifies about the outcry is commonly known as the "outcry witness." *See Sanchez .v State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). If the

---

[1] Appellant's original appellate counsel filed an *Anders* brief stating that the appeal was wholly frivolous and without merit. *See generally Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). We conducted an independent review of the record to satisfy ourselves that the attorney had performed a diligent and thorough search of the record for any arguable claim and to determine if counsel had correctly concluded the appeal was frivolous. *See Bledsoe v. State*, 178 S.W.3d 824, 826–27 (Tex. Crim. App. 2005). We determined that the appeal was not frivolous, granted counsel's motion to withdraw, abated the appeal, and remanded the case to the trial court for appointment of new counsel to review the record and file a brief for Appellant. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). We have received new counsel's brief raising five issues for our consideration.

statutory requirements are met, outcry witness testimony is substantive evidence of the crime. *See Martinez*, 178 S.W.3d at 810 n.14 (citations omitted).

An outcry is admissible over a hearsay objection if (1) notice of the outcry witness and a written summary of the statement is given to the adverse party at least fourteen days prior to the hearing; (2) the trial court conducts a hearing outside the presence of a jury and finds the statement "is reliable based on the time, content, and circumstances of the statement"; and (3) the child is available to testify. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b).

**Discussion**

Appellant does not challenge the State's notice, the summary of "Dorothy's" outcry testimony, or the fact that "S." and "J." were available to testify.[2] *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(1), (3). His sole contention is that the statements are not reliable.

A. Dorothy's Hearing Testimony

Dorothy testified that prior to S.'s outcry, S. had been "acting up and getting in trouble at school." Dorothy confronted S. in her bedroom and told her that she could not leave until S. told her "what was wrong." It was not until then that S. made allegations of sexual abuse against Appellant. Dorothy explained that S. started crying and told her she "didn't want to tell . . . because it would destroy our family." After "argu[ing] back and forth," S. told Dorothy that Appellant "stuck his penis in her mouth," made her touch his penis, and touched her vagina. S. also told Dorothy that Appellant made her touch his penis with her foot when she went down a waterslide at their previous home.

Dorothy testified that S. told her these events occurred when she was between four and seven years old. And after telling Dorothy what had happened, S. told her that "it happened to [J.] too." Upon hearing this, Dorothy called J. into S.'s bedroom, and J. told her that Appellant made her touch his penis and he touched her vagina. Dorothy testified that J. did not "give her any circumstances of what had happened," but insisted that the girls had no motive to lie.

Dorothy testified that she confronted Appellant with the outcries and he confirmed the abuse. Nevertheless, she "allowed" Appellant to keep living with her and the children because the girls "begged me not to make him leave." Dorothy filed for divorce on January 25, 2011,

---

[2] Dorothy is Appellant's ex-wife, the mother of S., and the former stepmother of J. S. and J. are the same age.

several months after the girls' outcries. On April 1, 2011, J. made a second outcry to Dorothy, and told her that Appellant had sex with her.

B. Appellant's Argument

To support his contention that Dorothy's outcry statements are unreliable, Appellant refers this court to (1) "Allen's" testimony that he believed the first time Dorothy had heard the girls' outcries was on the day that S. told him about the abuse, (2) Louie Criner's testimony that S. and J. had been interviewed by CPS shortly before the outcries and denied abuse, (3) the evidence that the CPS investigation "ruled out" allegations of sexual assault (at approximately the same time the girls allegedly made their first outcry to Dorothy), (4) J.'s testimony that the first person she ever told about the alleged abuse was her mother, "Pamela," and (5) the testimony that law enforcement was not notified until two weeks before Dorothy and Appellant's divorce was final.[3] This evidence, however, was not presented during the hearing on the admissibility of the outcry statements. Therefore, we consider only Dorothy's testimony at the hearing in reviewing the trial court's ruling. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § (2)(b)(2).

C. Reliability of the Statements

The determination of whether an outcry statement is reliable must be made on a case by case basis. *Davidson v. State*, 80 S.W.3d 132, 139 (Tex. App.—Texarkana 2002, pet. ref'd). A trial court's reliability determination is based on the time, content, and circumstances of the statement. *See Sanchez*, 354 S.W.3d at 487. The phrase "time, content, and circumstances" refers to the "time the child's statement was made to the outcry witness, the content of the child's statement, and the circumstances surrounding the making of that statement." *Broderick v. State*, 89 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). The outcry witness's credibility has no bearing on the reliability of the outcry statement. *See Sanchez*, 354 S.W.3d at 487–88.

Dorothy's testimony showed that S. was reluctant to tell her about Appellant's sexual abuse.[4] Although the record shows that S. made her outcry at Dorothy's insistence, it cannot be said that Dorothy's insistence was meant to solicit allegations of sexual abuse. Dorothy's

---

[3] "Allen" is S.'s biological father. Louie Criner is a former CPS investigator who investigated a report involving S., J., and J.'s younger sister, "M.", that began in December 2009.

[4] In this section, references to Dorothy's testimony relate solely to her testimony during the hearing.

testimony showed that she was simply trying to understand why S. had been "acting up and getting in trouble at school."

Dorothy gave no testimony about whether J., like S., had engaged in conduct that caused concern. But the record shows that immediately after S. made her outcry and Dorothy called J. into the bedroom, J. made similar outcries of sexual abuse. Although the State did not develop Dorothy's testimony regarding J.'s second outcry (pertaining to having intercourse with Appellant), the evidence before the trial court did not suggest that J.'s second outcry was a product of coaching or ill will towards Appellant.

## Conclusion

We agree that the evidence at trial suggests Pamela may have been the proper outcry witness for J.'s first outcry. We also agree that evidence pertaining to the CPS investigation where the girls denied abuse and CPS "ruled out" the allegations of sexual assault casts doubt upon the girls' and Dorothy's truthfulness. But none of this evidence was presented during the trial court's hearing to determine the reliability of the outcries.

Dorothy's testimony regarding the time, content, and circumstances surrounding S.'s and J.'s outcries supports the trial court's reliability determination. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2). The trial court did not abuse its discretion by permitting Dorothy's testimony about S.'s and J.'s outcries. *See Martin*, 173 S.W.3d at 467. Accordingly, we overrule Appellant's first issue.

### AUTHENTICATION

In his fourth issue, Appellant contends the trial court erred by admitting evidence that he wrote a note saying "I'm sorry, please forgive me" on the bathroom wall of his marital home. The State argued the evidence was admissible because it was an admission by a party opponent. But the issue at trial and on appeal relates to whether the note was properly authenticated.

## Applicable Law

Authentication is a condition precedent to the admissibility of evidence. *See* TEX. R. EVID. 901(a); *Hislop v. State*, 64 S.W.3d 544, 546 (Tex. App.—Texarkana 2001, no pet.). To authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). In determining whether the proffered evidence is authentic, "[t]he preliminary question for the trial court to

decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the [proffered evidence] is authentic." ***Tienda v. State***, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012).

Evidence may be authenticated by introducing (1) testimony from a witness with knowledge, (2) a nonexpert opinion on handwriting, (3) a comparison by the trier of fact or an expert witness, (4) evidence of distinctive characteristics "and the like," (5) an opinion about a voice, and (6) evidence about a telephone conversation. *See* TEX. R. EVID. 901(b). These examples are not an exhaustive list, and evidence may be properly authenticated in a manner not listed in Rule 901. *See, e.g.*, ***Tienda***, 358 S.W.3d at 638 (discussing authentication of electronic communication technology).

## Discussion

During its case in chief, the State called Dorothy's friend, "Cynthia Bailey," to testify. Cynthia testified that she has known Dorothy since she was in eighth grade and that Dorothy's children and J. call her "Aunt Cynthia." She testified that she had taken the children to her house the night that Appellant was "kick[ed]" out. Cynthia returned the children to Dorothy the next day. Once at Dorothy's house, Cynthia asked to take a shower. Cynthia testified that she saw "something really strange wrote on the wall" in the bathroom. When asked what was written, trial counsel objected on hearsay grounds and his objection was sustained. The following exchange then took place:

> Prosecutor: Who wrote the note?
>
> Cynthia: I don't—
>
> Prosecutor: Okay. Did you at some point in time find out who wrote the note?
>
> Cynthia: Yes.
>
> Prosecutor: All right. And who did you, after doing some research, who wrote that note?
>
> Cynthia: Danny.

After eliciting this testimony, the prosecutor argued the statement was admissible as an admission by a party opponent. Defense counsel objected, and argued "the alleged, [sic] admission by a party opponent was received through way of a hearsay statement that would try to be admissible."

"Hearsay" is an out of court statement made by someone other than the witness testifying at trial, "offer[ed] in evidence to prove the truth of the matter asserted in the statement." TEX. R. EVID. 801 (d)(2). We agree that the above quoted exchange supports an inference that Cynthia's "research" of who wrote the note was based on hearsay. But Cynthia's testimony could equally support the inference that Cynthia's "research" consisted of comparing the handwriting on the wall to handwriting known to be Appellant's. *See* TEX. R. EVID. 901(b)(2).

Here, the record is insufficient to support Appellant's contention that the evidence was authenticated by hearsay. Without more, we cannot conclude the trial court's admission of the evidence was an abuse of discretion. *See Martin*, 173 S.W.3d at 467. Accordingly, we overrule Appellant's fourth issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Appellant contends he received ineffective assistance of counsel. Appellant's contentions are based on trial counsel's failure to object to outcry witness testimony and Appellant's not testifying during the guilt-innocence phase of trial.

### Applicable Law

To prevail on an ineffective assistance of counsel claim, an appellant must prove by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The first prong of the test requires a showing that counsel made errors so serious that counsel was not functioning as the counsel required by the Sixth Amendment, and that counsel's representation fell below an objective standard of reasonableness. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). The second prong requires a showing that counsel's errors were so serious as to deprive the appellant of a fair trial. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Simply put, the appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Tong*, 25 S.W.3d at 712; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Tong*, 25 S.W.3d at 712. If both prongs of the *Strickland* test are not satisfied, we cannot conclude that the trial results were unreliable. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

Judicial review of an ineffectiveness claim is highly deferential. *See **Thompson***, 9 S.W.3d at 813. In conducting this review, we presume that counsel's conduct fell within the wide range of reasonable professional assistance. *See **id.*** Thus, allegations of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See **id.*** at 814. In the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the alleged failure of trial counsel in order to satisfy ***Strickland's*** requirements. *See **id.*** at 813–14. Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." ***Menefield v. State***, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). If trial counsel is not given that opportunity, the appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. ***Id.***

**Discussion**

Appellant contends that he received ineffective assistance of counsel at trial because (1) trial counsel failed to properly object to the outcry witness testimony during the reliability hearing and (2) trial counsel deprived him of his constitutional right to testify and commented on this fact in front of the jury.

A. Lack of Objections to Outcry Statements

The State's notice of intent to introduce the outcry statements of J. and S. identified Dorothy and Allen as outcry witnesses. The summary of S.'s outcry statement to Dorothy was that Appellant made S. touch his penis, put his penis in S.'s mouth, and touched S.'s vagina. The summary of J.'s outcry statement to Dorothy was that Appellant touched J.'s vagina, made J. touch his penis, put his penis in J.'s mouth, put his mouth on J.'s vagina, and put his penis inside J.'s vagina. The summary of S.'s outcry statement to Allen was that S. made "an allusion to being sexually assaulted[,] saying that defendant touched her inappropriately."

The notice stated that the outcry statements were "contained in the discovery." There is no indication that the statements were attached to the notice. Appellant contends that counsel was deficient for failing to object to the notice because the outcry statements were not attached to the notice and thus did not satisfy Article 38.072.

Dorothy's testimony during the reliability hearing did not vary from the summary contained in the notice. Nor did her trial testimony vary from her testimony at the reliability hearing. Because Dorothy's testimony was consistent with the notice, any objection regarding

deficient notice would have been frivolous. *See Brennan v. State*, 334 S.W.3d 64, 74 (Tex. App.—Dallas 2009, no pet.) ("[E]ven if trial counsel had objected, the trial court would not have erred in overruling the objections, and it is not ineffective assistance for counsel to forego making frivolous arguments and objections.").

Appellant contends trial counsel was ineffective because he made no objection to the State's listing of more than one outcry witness in its notice regarding S.'s outcry statements. Here, the summaries of S.'s outcry to Dorothy and Allen are different. Multiple outcry witnesses can testify about different instances of abuse committed by the defendant against the victim. *Tear v. State*, 74 S.W.3d 555, 559 (Tex. App.—Dallas 2002, pet. ref'd). Thus, it was not impermissible for the State's notice to identify more than one outcry. *See id.* Nor was it error when trial counsel failed to object to the listing of multiple outcry witnesses. *See Brennan*, 334 S.W.3d at 74.

Appellant's final complaint about trial counsel's performance and the State's notice is that J.'s mother, not Dorothy, was the proper outcry witness for J.'s statements. Dorothy's trial testimony revealed that CPS had prior involvement with her and Appellant because "[Pamela] had went to the CPS and told them that [J.] had told her that [Appellant] was touching her." Dorothy testified that this occurred when J. and S. were seven years old. J.'s testimony showed that she was five years old when she told Pamela "what was going on." Pamela's testimony confirmed that she made allegations against Appellant to CPS on two separate occasions. However, the record does not indicate that J.'s statements to Pamela described the alleged offenses "in some discernible manner." *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a); *Garcia*, 792 S.W.2d at 91 (holding that statement about offense "must be more than words which give a general allusion that something in the area of child abuse was going on."). Without more, we cannot conclude it was error to designate Dorothy as the outcry witness, nor can we conclude that counsel's failure to object on this ground prejudiced Appellant's defense. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Thompson*, 9 S.W.3d at 812.

B. Appellant's Right to Testify

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005) (citations omitted). Defense counsel shoulders the primary responsibility to inform the defendant of his right to testify,

including the fact that the ultimate decision belongs to the defendant. *Johnson v. State*, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005).

After the jury returned its guilty verdict and was recessed, Appellant asked to make a statement to the trial court. Outside the presence of the jury, Appellant testified, "My side of the story still has not been heard, and I do believe I've been denied that right to give that before the end of this trial." Upon answering the trial court's questions, Appellant explained that his attorney discussed his right to testify and advised him that he did not believe it would be a good idea.

Trial counsel and the trial court confirmed that Appellant was given extra time to speak with his attorney after the last witness testified. Trial counsel testified that when he spoke with Appellant during this time, he advised him that it was not in his best interest to testify. Appellant then told the trial court, "I even called his office over the weekend and again first thing this morning, and I was told that it was too late, that I was not going to have that opportunity." The trial court did not inquire as to whether trial counsel advised Appellant it was "too late" to testify. Instead, the trial court asked if trial counsel had "[a]nything else" to say, to which trial counsel responded, "[N]o."

Article 36.02 requires the trial court to allow testimony before the argument of a cause is concluded "if it appears that it is necessary to a due administration of justice." *See* TEX. CODE CRIM. PROC. ANN. art. 36.02 (West 2007). Here, both sides rested and closed on a Friday afternoon, and the jury did not hear the court's charge or closing arguments until the following Monday morning. Thus, if Appellant's assertion that trial counsel told him it was "too late" to testify is true, then trial counsel gave him erroneous advice.

But the record does not show whether trial counsel gave erroneous advice because no inquiry was made into whether Appellant's assertions were true. As a result, we cannot denounce counsel as ineffective on this ground because the record does not affirmatively demonstrate this alleged ineffectiveness. *See Thompson*, 9 S.W.3d at 813.

C. Testifying Against Counsel's Advice

Appellant testified during the punishment phase of trial. His testimony began with the following exchange between him and his trial counsel in front of the jury:

> Trial Counsel: Now, Danny, before we get going, we had discussed at length whether or not you should testify or not; is that correct?

10

Appellant:  Yes.

Trial Counsel:  And in fact, as your attorney, I advised you, that you had no obligation whatsoever to take the stand and testify in your own defense; is that correct?

Appellant:  Yes.

Trial Counsel:  And in fact, I had advised you that based on the way that the trial has been going, that it was my recommendation that you don't take the stand; is that correct?

Appellant:  That is.

Trial Counsel:  However, you have insisted that you have your opportunity to be heard; is that correct?

Appellant:  That's correct.

Trial Counsel:  And that would be against my recommendation to you; correct?

Appellant:  Correct.

Appellant argues that trial counsel's admonishment before the jury was clearly prejudicial and "could not be deemed, under any conceivable circumstance, 'trial strategy[.]'"

Trial counsel was not functioning as the counsel required by the Sixth Amendment when he engaged in the quoted dialogue with Appellant in front of the jury.  *See Tong*, 25 S.W.3d at 712.  Had trial counsel believed that Appellant's admissions were necessary to shield him from ineffective assistance claims in the future, these admonishments should have been made outside the presence of the jury.  The State has not cited, nor have we found, any case in which trial counsel elicited testimony from his client in order to illustrate a disagreement in trial strategy before the jury.

Although trial counsel should ordinarily be afforded an opportunity to explain his actions, we cannot presume that the above-mentioned conduct fell within the wide range of reasonable professional assistance.  *Thompson*, 9 S.W.3d at 813.  In this instance, the record need not be further developed to determine if counsel's conduct constituted trial strategy because "no competent attorney would have engaged in it."  *See Menefield*, 363 S.W.3d at 593.  However, before denouncing counsel as ineffective, we must determine whether there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.  *Tong*, 25 S.W.3d at 712.  Accordingly, we review the remainder of Appellant's testimony in light of counsel's error.

1.      Appellant's Testimony

Appellant testified about his relationship with his two ex-wives, Pamela and Dorothy. His testimony confirmed that he had two children with Pamela. He testified that he married Dorothy after his divorce and explained that they lived together with his two children and her two children in the same house.

CPS first entered Appellant's life when S. and J. were four years old. Appellant testified that CPS became involved because S. saw his penis through a hole in his boxers. He explained that when he leaned over to tell S. and J. goodnight, J. hugged him in such a way that caused him to lose his balance. When this happened, Appellant's penis could be seen from his boxers. Appellant testified that he did not know of the inadvertent exposure, but after that incident, wore only boxers that had button closures.

During the guilt-innocence phase of trial, S. testified that Appellant digitally penetrated her vagina while playing "the airplane game." Appellant testified that he never recalled any incidents where he played with S. and his fingers penetrated her vagina. However, his testimony confirmed that there was "holding, but not reaching inside."[5]

Appellant testified that he was not made "part of the discussion" the second time CPS became involved in his family's life. He testified that he did not know what was discovered in the investigation, except that the allegations were "ruled out." The record showed that Pamela made the allegations leading to the second CPS investigation. Appellant testified that he believed Pamela's allegations were an effort to obtain custody of J. and her younger sister, "M." He explained that, as a result, he and Dorothy took precautionary measures to protect themselves if subsequent reports were made to CPS.

During the guilt-innocence phase, Dorothy testified that she had placed motion sensors in the hallway of her and Appellant's home. Appellant testified that he was actually the one who installed the motion sensors, and that they were installed after S. snuck out of the house to see a boyfriend. The testimony during the guilt-innocence phase showed that the girls and Dorothy confronted Appellant after they made their outcries. Appellant testified that no such confrontation occurred.

---

[5] On cross examination, Appellant testified that his hand was not underneath S.'s clothing and that it was possible that his hand was close enough to touch S.'s vaginal area.

The record showed that Appellant attempted suicide in November 2010. According to Dorothy, J., and S., Appellant's suicide attempt illustrated Appellant's guilt and feeling of hopelessness because he sexually abused them. But Appellant testified that his suicide attempt had nothing to do with the allegations that J. and S. made against him. Appellant explained that he was very distraught about his marriage failing and being separated from his family.

Finally, on cross examination, Appellant confirmed that he recently remarried and has three stepdaughters, ages 8, 15, and 18. He also confirmed that one of his stepdaughters told CPS that he "creep[s] her out," that she is uncomfortable with him, and that she called someone to "pick her up" because she did not want to live in the same house with him.

Despite these admissions, Appellant maintained the allegations that he had sexually abused S. and J. were not true, and were fabricated so that Dorothy could be granted custody of J.

2.    Appellant's Defense and Prejudice

Trial counsel's eliciting Appellant's admission before the jury that he was testifying against counsel's advice fell below an objective standard of reasonableness. *See Tong*, 25 S.W.3d at 712. Trial counsel's admonishments made the jury aware that he (1) did not believe Appellant's testimony would help his case or (2) believed that Appellant's testimony would only make his case worse.

The record shows that Appellant's defensive theory was to undermine S.'s, J.'s, and Dorothy's credibility by denying all allegations of abuse. Nevertheless, Appellant's testimony that he "inadvertently" exposed his penis to S. and that, when he played "the airplane game," he touched, but did not penetrate, S.'s vagina further supports S.'s testimony.

Appellant's marriage after the allegations surfaced does not affect S.'s, J.'s, or Dorothy's credibility. However, Appellant's admission on cross-examination that one of his three new stepdaughters was uncomfortable around him, did not want to live with him, and told CPS that he "creep[s] her out" raises questions about his conduct around the three girls. And the fact that Appellant's conduct around his three new stepdaughters could be considered questionable further supports the jury's finding that S., J., and Dorothy were credible witnesses.

We note that the jury assessed the maximum punishment for each count against Appellant. After viewing Appellant's testimony as a whole, it can be inferred that trial counsel's comments, while unprofessional, were not a comment on Appellant's credibility. And nothing in

13

the record indicates that Appellant's testimony would have been any different had trial counsel not admonished him.[6]

The jury's decision at both phases of trial was based on credibility, and their verdict reflects as much. The record does not show that there is a reasonable probability that, but for trial counsel's admonishments, the result would have been different. *See **Tong***, 25 S.W.3d at 712.

Appellant has not proved by a preponderance of the evidence that trial counsel's deficient performance prejudiced his defense. *See **id.*** Accordingly, we overrule Appellant's second issue.

### RIGHT TO FAIR TRIAL

In his third issue, Appellant contends that he did not receive a fair trial because he was denied the right to testify. Appellant's third issue is an extension of his ineffective assistance of counsel argument as it relates to the second prong of the ***Strickland*** test. *See **Strickland***, 466 U.S. at 687, 104 S. Ct. at 2064 (requiring a showing that counsel's errors were so serious as to deprive the appellant of a fair trial). We concluded that the record is insufficient for us to determine whether trial counsel erroneously advised Appellant that it was too late to testify. However, we also concluded that the jury's credibility determinations favored J., S., and Dorothy, regardless of Appellant's testimony. Accordingly, even if Appellant was deprived of the right to testify during the guilt-innocence phase of trial, he was not deprived of a fair trial because he testified during the punishment phase. The record does not indicate that Appellant's testimony would have been different if given during the guilty-innocence phase, and thus, the jury's credibility determination would have been the same. *See **id.***; ***Tong***, 25 S.W.3d at 712. Accordingly, we overrule Appellant's third issue.

### ATTORNEY'S FEES

In his fifth issue, Appellant contends the judgments ordering reimbursement of attorney's fees are not supported by sufficient evidence. The State agrees.

---

[6] Similarly, nothing in the record indicates Appellant's testimony would have been any different if given during the guilt-innocence phase.

**Applicable Law**

A trial court has the authority to assess attorney's fees against a criminal defendant who received court-appointed counsel. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2014). But once a criminal defendant has been determined to be indigent, he "is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in his financial circumstances occurs." TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2014). Thus, once a defendant has been deemed indigent, the trial court must make a determination supported by some factual basis in the record that the defendant's financial circumstances have changed, and that he has the financial resources to enable him to offset in part or in whole the costs of the legal services provided. *See **Johnson v. State***, 405 S.W.3d 350, 354 (Tex. App.—Tyler 2013, no pet.) (citations omitted). If the record does not show that the defendant's financial circumstances materially changed, the evidence will be insufficient to support the imposition of attorney's fees. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p); ***Mayer v. State***, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010); ***Johnson***, 405 S.W.3d at 354.

**Discussion**

The clerk issued a separate judgment for each count in cause numbers 12-13-00225-CR and 12-14-00039-CR. Because the indictment contained three counts, there are three separate judgments in cause number 12-13-00225-CR. Each judgment in cause number 12-13-00225-CR states that attorney's fees are "[i]ncluded in [12-14-00039-CR] count I." There are two judgments in cause number 12-14-00039-CR (a judgment for count I and a judgment for count II). The judgment for count II also states that attorney's fees are "[i]ncluded in [12-14-00039-CR] count I." The judgment for count I in cause number 12-14-00039-CR assesses attorney's fees in the amount of $5,325.00.

It is undisputed that Appellant was indigent because trial counsel was appointed to represent him in this case. The trial court made no finding that Appellant's financial circumstances materially changed since trial counsel was appointed. There is no basis in the record to support the imposition of attorney's fees. *See **Johnson***, 405 S.W.3d at 354. Accordingly, we sustain Appellant's fifth issue.

15

## DISPOSITION

Having sustained Appellant's fifth issue, we *modify* the judgment for count I in cause number 12-14-00039-CR to reflect that attorney's fees are $0.00, and *affirm* the judgment *as modified*. *See* TEX. R. APP. P. 43.2(b). Having overruled Appellant's first, second, third, and fourth issues, we *affirm* the judgment for each of the three counts in cause number 12-13-00225-CR and *affirm* the judgment for count II in cause number 12-14-00039-CR.

JAMES T. WORTHEN
Chief Justice

Opinion delivered October 14, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 14, 2015

NO. 12-14-00039-CR

**DANNY RAY LUSK,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 3rd District Court

of Henderson County, Texas (Tr.Ct.No. C-18,897)

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein; and the same being inspected, it is the opinion of the Court that there was error in the judgment for count I, but no error in the judgment for count II.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's judgment for count I be **modified** to reflect that attorney's fees are $0.00; **and as modified**, the trial court's judgment is **affirmed**; that the trial court's judgment for count II be and hereby is **affirmed**; and that this decision be certified to the trial court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 14, 2015

NO. 12-13-00225-CR

**DANNY RAY LUSK,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 3rd District Court

of Henderson County, Texas (Tr.Ct.No. C-19,241)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment for each of the three counts.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment for each of the three counts of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*